HONDA MOTOR CO., LTD., ET AL. *v.* OBERG

No. 93–644.   Argued April 20, 1994—Decided June 24, 1994

416

STEVENS, J., delivered the opinion of the Court, in which BLACKMUN, O'CONNOR, SCALIA, KENNEDY, SOUTER, and THOMAS, JJ., joined.   SCALIA,

J., filed a concurring opinion, *post*, p. 435. GINSBURG, J., filed a dissenting opinion, in which REHNQUIST, C. J., joined, *post*, p. 436.

*Andrew L. Frey* argued the cause for petitioners. With him on the briefs were *Kenneth S. Geller, Charles A. Rothfeld, Evan M. Tager, Thomas W. Brown, Jeffrey R. Brooke,* and *Paul G. Cereghini.*

*Laurence H. Tribe* argued the cause for respondent. With him on the brief were *William A. Gaylord, Kenneth J. Chesebro, Michael H. Gottesman,* and *Raymond F. Thomas.**

---

*Briefs of *amici curiae* urging reversal were filed for the American Council of Life Insurance et al. by *Erwin N. Griswold, Patricia A. Dunn, Stephen J. Goodman, Richard E. Barnsback, Phillip E. Stano,* and *Patrick J. McNally;* for the Equal Employment Advisory Council by *Douglas S. McDowell* and *Kimberly L. Japinga;* for the Product Liability Advisory Council, Inc., et al. by *Malcolm E. Wheeler;* for Snap-on Tools Corp. et al. by *Gary M. Elden* and *Donald A. Vogelsang;* and for the Washington Legal Foundation by *Arvin Maskin, Steven Alan Reiss, Peter A. Antonucci, Daniel J. Popeo,* and *Paul D. Kamenar.*

Briefs of *amici curiae* urging affirmance were filed for the State of Hawaii et al. by *Theodore R. Kulongoski,* Attorney General of Oregon, *Thomas A. Balmer,* Deputy Attorney General, *Virginia L. Linder,* Solicitor General, and *Rives Kistler,* Assistant Attorney General, *Robert A. Marks,* Attorney General of Hawaii, *Robert T. Stephan,* Attorney General of Kansas, *Hubert H. Humphrey III,* Attorney General of Minnesota, *Mike Moore,* Attorney General of Mississippi, and *Joseph P. Mazurek,* Attorney General of Montana; for the Association of Trial Lawyers of America by *Jeffrey Robert White, Cheryl Flax-Davidson,* and *Barry J. Nace;* and for Trial Lawyers for Public Justice by *Arthur H. Bryant, Leslie Brueckner,* and *Michael Rustad.*

Briefs of *amici curiae* were filed for CBS Inc. et al. by *P. Cameron DeVore, Marshall J. Nelson, Douglas P. Jacobs, David C. Kohler, Devereaux Chatillon, Mark L. Tuft, Harold W. Fuson, Jr., R. Bruce Rich, Kenneth M. Vittor, Slade R. Metcalf, John F. Sturm, René P. Milam, J. Laurent Scharff, Jane E. Kirtley, Bruce W. Sanford,* and *Henry S. Hoberman;* for Legal Historian Daniel R. Coquillette et al. by *Arthur F. McEvoy III;* and for the Oregon Trial Lawyers Association by *Kathryn H. Clarke* and *Maureen Leonard.*

JUSTICE STEVENS delivered the opinion of the Court.

An amendment to the Oregon Constitution prohibits judicial review of the amount of punitive damages awarded by a jury "unless the court can affirmatively say there is no evidence to support the verdict." The question presented is whether that prohibition is consistent with the Due Process Clause of the Fourteenth Amendment. We hold that it is not.

I

Petitioner Honda Motor Co., Ltd., manufactured and sold the three-wheeled all-terrain vehicle that overturned while respondent was driving it, causing him severe and permanent injuries. Respondent brought suit alleging that petitioner knew or should have known that the vehicle had an inherently and unreasonably dangerous design. The jury found petitioner liable and awarded respondent $919,390.39 in compensatory damages and punitive damages of $5 million. The compensatory damages, however, were reduced by 20% to $735,512.31, because respondent's own negligence contributed to the accident. On appeal, relying on our then-recent decision in *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U. S. 1 (1991), petitioner argued that the award of punitive damages violated the Due Process Clause of the Fourteenth Amendment, because the punitive damages were excessive and because Oregon courts lacked the power to correct excessive verdicts.

The Oregon Court of Appeals affirmed, as did the Oregon Supreme Court. The latter court relied heavily on the fact that the Oregon statute governing the award of punitive damages in product liability actions and the jury instructions in this case[1] contain substantive criteria that provide

---

[1] The jury instructions, in relevant part, read: "'Punitive damages may be awarded to the plaintiff in addition to general damages to punish wrongdoers and to discourage wanton misconduct. In order for plaintiff to recover punitive damages against the defendant[s], the plaintiff must

at least as much guidance to the factfinders as the Alabama statute and jury instructions that we upheld in *Haslip.* The Oregon Supreme Court also noted that Oregon law provides an additional protection by requiring the plaintiff to prove entitlement to punitive damages by clear and convincing evidence rather than a mere preponderance. Recognizing that other state courts had interpreted *Haslip* as including a "clear . . . constitutional mandate for meaningful judicial scrutiny of punitive damage awards," *Adams* v. *Murakami,* 54 Cal. 3d 105, 118, 813 P. 2d 1348, 1356 (1991); see also *Alexander & Alexander, Inc.* v. *B. Dixon Evander & Assocs., Inc.,* 88 Md. App. 672, 596 A. 2d 687 (1991), the court nevertheless declined to "interpret *Haslip* to hold that an award of punitive damages, to comport with the requirements of the Due Process Clause, always must be subject to a form of post-verdict or appellate review that includes the possibility of remittitur." 316 Ore. 263, 284, 851 P. 2d 1084, 1096 (1993). It also noted that trial and appellate courts were "not entirely powerless" because a judgment may be vacated if "there is no evidence to support the jury's decision," and because "appellate review is available to test the sufficiency of the jury instructions." *Id.,* at 285, 851 P. 2d, at 1096–1097.

---

prove by clear and convincing evidence that defendant[s have] shown wanton disregard for the health, safety, and welfare of others. . . . If you decide this issue against the defendant[s], you may award punitive damages, although you are not required to do so, because punitive damages are discretionary. In the exercise of that discretion, you shall consider evidence, if any, of the following: First, the likelihood at the time of the sale [of the three-wheeled vehicle] that serious harm would arise from defendants' misconduct. Number two, the degree of the defendants' awareness of that likelihood. Number three, the duration of the misconduct. Number four, the attitude and conduct of the defendant[s] upon notice of the alleged condition of the vehicle. Number five, the financial condition of the defendant[s]. And the amount of punitive damages may not exceed the sum of $5 million.'" 316 Ore. 263, 282, n. 11, 851 P. 2d 1084, 1095, n. 11 (1993).

We granted certiorari, 510 U. S. 1068 (1994), to consider whether Oregon's limited judicial review of the size of punitive damages awards is consistent with our decision in *Haslip*.

## II

Our recent cases have recognized that the Constitution imposes a substantive limit on the size of punitive damages awards. *Pacific Mut. Life Ins. Co.* v. *Haslip*, 499 U. S. 1 (1991); *TXO Production Corp.* v. *Alliance Resources Corp.*, 509 U. S. 443 (1993). Although they fail to "draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable," *id.*, at 458; *Haslip*, 499 U. S., at 18, a majority of the Justices agreed that the Due Process Clause imposes a limit on punitive damages awards. A plurality in *TXO* assented to the proposition that "grossly excessive" punitive damages would violate due process, 509 U. S., at 453–455, while JUSTICE O'CONNOR, who dissented because she favored more rigorous standards, noted that "[i]t is thus common ground that an award may be so excessive as to violate due process," *id.*, at 480. In the case before us today we are not directly concerned with the character of the standard that will identify unconstitutionally excessive awards; rather, we are confronted with the question of what procedures are necessary to ensure that punitive damages are not imposed in an arbitrary manner. More specifically, the question is whether the Due Process Clause requires judicial review of the amount of punitive damages awards.

The opinions in both *Haslip* and *TXO* strongly emphasized the importance of the procedural component of the Due Process Clause. In *Haslip*, the Court held that the common-law method of assessing punitive damages did not violate procedural due process. In so holding, the Court stressed the availability of both "meaningful and adequate review by the trial court" and subsequent appellate review. 499 U. S., at 20. Similarly, in *TXO*, the plurality opinion

found that the fact that the "award was reviewed and upheld by the trial judge" and unanimously affirmed on appeal gave rise "to a strong presumption of validity." 509 U. S., at 457. Concurring in the judgment, JUSTICE SCALIA (joined by JUSTICE THOMAS) considered it sufficient that traditional common-law procedures were followed. In particular, he noted that " 'procedural due process' requires judicial review of punitive damages awards for reasonableness." *Id.*, at 471.

All of those opinions suggest that our analysis in this case should focus on Oregon's departure from traditional procedures. We therefore first contrast the relevant common-law practice with Oregon's procedure, which that State's Supreme Court once described as "a system of trial by jury in which the judge is reduced to the status of a mere monitor." *Van Lom* v. *Schneiderman*, 187 Ore. 89, 113, 210 P. 2d 461, 471 (1949). We then examine the constitutional implications of Oregon's deviation from established common-law procedures.

### III

Judicial review of the size of punitive damages awards has been a safeguard against excessive verdicts for as long as punitive damages have been awarded. One of the earliest reported cases involving exemplary damages, *Huckle* v. *Money*, 2 Wils. 205, 95 Eng. Rep. 768 (C. P. 1763), arose out of King George III's attempt to punish the publishers of the allegedly seditious *North Briton*, No. 45. The King's agents arrested the plaintiff, a journeyman printer, in his home and detained him for six hours. Although the defendants treated the plaintiff rather well, feeding him "beef steakes and beer, so that he suffered very little or no damages," 2 Wils., at 205, 95 Eng. Rep., at 768, the jury awarded him £300, an enormous sum almost 300 times the plaintiff's weekly wage. The defendant's lawyer requested a new trial, arguing that the jury's award was excessive. Plain-

tiff's counsel, on the other hand, argued that "in cases of tort . . . the court will never interpose in setting aside verdicts for excessive damages." *Id.*, at 206, 95 Eng. Rep., at 768. While the court denied the motion for new trial, the Chief Justice explicitly rejected plaintiff's absolute rule against review of damages amounts. Instead, he noted that when the damages are "outrageous" and "all mankind at first blush must think so," a court may grant a new trial "for excessive damages." *Id.*, at 207, 95 Eng. Rep., at 769. In accord with his view that the amount of an award was relevant to the motion for a new trial, the Chief Justice noted that "[u]pon the whole I am of opinion the damages are not excessive." *Ibid.*

Subsequent English cases, while generally deferring to the jury's determination of damages, steadfastly upheld the court's power to order new trials solely on the basis that the damages were too high. *Fabrigas* v. *Mostyn*, 2 Black. W. 929, 96 Eng. Rep. 549 (C. P. 1773) (Damages "may be so monstrous and excessive, as to be in themselves an evidence of passion or partiality in the jury");[2] *Sharpe* v. *Brice*, 2 Black. W. 942, 96 Eng. Rep. 557 (C. P. 1774) ("It has never been laid down, that the Court will not grant a new trial for excessive damages in any cases of tort"); *Leith* v. *Pope*, 2 Black. W. 1327, 1328, 96 Eng. Rep. 777, 778 (C. P. 1779) ("[I]n cases of tort the Court will not interpose on account of the largeness of damages, unless they are so flagrantly excessive as to afford an internal evidence of the prejudice and partial-

---

[2] As in many early cases, it is unclear whether this case specifically concerns punitive damages or merely ordinary compensatory damages. Since there is no suggestion that different standards of judicial review were applied for punitive and compensatory damages before the 20th century, no effort has been made to separate out the two classes of cases. See Brief for Legal Historians Daniel R. Coquillette et al. as *Amici Curiae* 2, 3, 6–7, 15 (discussing together "punitive damages, personal injury, and other cases involving difficult-to-quantify damages").

ity of the jury"); *Jones* v. *Sparrow*, 5 T. R. 257, 101 Eng. Rep. 144 (K. B. 1793) (new trial granted for excessive damages); *Goldsmith* v. *Lord Sefton*, 3 Anst. 808, 145 Eng. Rep. 1046 (Exch. 1796) (same); *Hewlett* v. *Cruchley*, 5 Taunt. 277, 281, 128 Eng. Rep. 696, 698 (C. P. 1813) ("[I]t is now well acknowledged in all the Courts of *Westminster-hall*, that whether in actions for criminal conversation, malicious prosecutions, words, or any other matter, if the damages are clearly too large, the Courts will send the inquiry to another jury").

Respondent calls to our attention the case of *Beardmore* v. *Carrington*, 2 Wils. 244, 95 Eng. Rep. 790 (C. P. 1764), in which the court asserted that "there is not one single case, (that is law), in all the books to be found, where the court has granted a new trial for excessive damages in actions for torts." *Id.*, at 249, 95 Eng. Rep., at 793. Respondent would infer from that statement that 18th-century common law did not provide for judicial review of damages. Respondent's argument overlooks several crucial facts. First, the *Beardmore* case antedates all but one of the cases cited in the previous paragraph. Even if respondent's interpretation of the case were correct, it would be an interpretation the English courts rejected soon thereafter. Second, *Beardmore* itself cites at least one case that it concedes granted a new trial for excessive damages, *Chambers* v. *Robinson*, 2 Str. 691, 93 Eng. Rep. 787 (K. B. 1726), although it characterizes the case as wrongly decided. Third, to say that "there is not one single case . . . in all the books" is to say very little, because then, much more so than now, only a small proportion of decided cases was reported. For example, for 1764, the year *Beardmore* was decided, only 16 Common Pleas cases are recorded in the standard reporter. 2 Wils. 208–257, 95 Eng. Rep. 769–797. Finally, the inference respondent would draw, that 18th-century English common law did not permit a judge to order new trials for excessive damages, is explicitly rejected by *Beardmore* itself,

which cautioned against that very inference: "We desired to be understood that this court does not say, or lay down any rule that there can never happen a case of such excessive damages in tort where the court may not grant a new trial." 2 Wils., at 250, 95 Eng. Rep., at 793.

Common-law courts in the United States followed their English predecessors in providing judicial review of the size of damages awards. They too emphasized the deference ordinarily afforded jury verdicts, but they recognized that juries sometimes awarded damages so high as to require correction. Thus, in 1822, Justice Story, sitting as Circuit Justice, ordered a new trial unless the plaintiff agreed to a reduction in his damages.[3] In explaining his ruling, he noted:

> "As to the question of excessive damages, I agree, that the court may grant a new trial for excessive damages.... It is indeed an exercise of discretion full of delicacy and difficulty. But if it should clearly appear that the jury have committed a gross error, or have acted from improper motives, or have given damages excessive in relation to the person or the injury, it is as much the duty of the court to interfere, to prevent the wrong, as in any other case." *Blunt* v. *Little*, 3 F. Cas. 760, 761–762 (No. 1,578) (CC Mass. 1822).

See also *Whipple* v. *Cumberland Mfg. Co.*, 29 F. Cas. 934, 937–938 (No. 17, 516) (CC Me. 1843).

---

[3] While Justice Story's grant of a new trial was clearly in accord with established common-law procedure, the remittitur—withdrawal of new trial if the plaintiff agreed to a specific reduction of damages—may have been an innovation. See *Dimick* v. *Schiedt*, 293 U. S. 474, 482–485 (1935). On the other hand, remittitur may have a better historical pedigree than previously thought. See *King* v. *Watson*, 2 T. R. 199–200, 100 Eng. Rep. 108 (K. B. 1788) ("[O]n a motion in the Common Pleas to set aside the verdict for excessive damages . . . the Court recommended a compromise, and on *Hurry's* agreeing to accept 1500 [pounds] they discharged the rule").

In the 19th century, both before and after the ratification of the Fourteenth Amendment, many American courts reviewed damages for "partiality" or "passion and prejudice." Nevertheless, because of the difficulty of probing juror reasoning, passion and prejudice review was, in fact, review of the amount of awards. Judges would infer passion, prejudice, or partiality from the size of the award.[4] *Coffin* v. *Coffin*, 4 Mass. 1, 41 (1808) (In cases of personal injury, "a verdict may be set aside for excessive damages" when "from the exorbitancy of them the court must conclude that the jury acted from passion, partiality, or corruption"); *Taylor* v. *Giger*, 3 Ky. 586, 587 (1808) ("In actions of tort . . . a new trial ought not to be granted for excessiveness of damages, unless the damages found are so enormous as to shew that the jury were under some improper influence, or were led astray by the violence of prejudice or passion"); *McConnell* v. *Hampton*, 12 Johns. 234, 235 (N. Y. 1815) (granting new trial for excessive damages and noting: "That Courts have a legal right to grant new trials, for excessive damages in actions for *torts*, is no where denied . . ."); *Belknap* v. *Boston & Maine R. Co.*, 49 N. H. 358, 374 (1870) (setting aside both compensatory and punitive damages, because "[w]e think it evident that the jury were affected by some partiality or prejudice").

Nineteenth-century treatises similarly recognized judges' authority to award new trials on the basis of the size of damages awards. 1 D. Graham, A Treatise on the Law of New Trials 442 (2d ed. 1855) ("[E]ven in personal torts, where the jury find *outrageous damages*, clearly evincing partiality, prejudice and passion, the court will interfere for the relief

---

[4] This aspect of passion and prejudice review has been recognized in many opinions of this Court. *Browning-Ferris Industries of Vt., Inc.* v. *Kelco Disposal, Inc.*, 492 U. S. 257, 272 (1989); *Pacific Mut. Life Ins. Co.* v. *Haslip*, 499 U. S. 1, 21, n. 10 (1991); *id.*, at 27 (SCALIA, J., concurring); *TXO Production Corp.* v. *Alliance Resources Corp.*, 509 U. S. 443, 467 (1993) (KENNEDY, J., concurring); *id.*, at 476–478 (O'CONNOR, J., dissenting).

of the defendant, and order a new trial"); T. Sedgwick, A Treatise on the Measure of Damages 707 (5th ed. 1869) ("The court again holds itself at liberty to set aside verdicts and grant new trials . . . whenever the damages are so excessive as to create the belief that the jury have been misled either by passion, prejudice, or ignorance"); 3 J. Sutherland, A Treatise on the Law of Damages 469 (1883) (When punitive damages are submitted to the jury, "the amount which they may think proper to allow will be accepted by the court, unless so exorbitant as to indicate that they have been influenced by passion, prejudice or a perverted judgment").

Modern practice is consistent with these earlier authorities. In the federal courts and in every State, except Oregon, judges review the size of damages awards. See *Dagnello* v. *Long Island R. Co.*, 289 F. 2d 797, 799–800, n. 1, (CA2 1961) (citing cases from all 50 States except Alaska, Maryland, and Oregon); *Nome* v. *Ailak*, 570 P. 2d 162, 173–174 (Alaska 1977); *Alexander & Alexander, Inc.* v. *B. Dixon Evander & Assocs., Inc.*, 88 Md. App., at 716–722, 596 A. 2d, at 709–711, cert. denied, 605 A. 2d 137 (Md. 1992); *Texaco, Inc.* v. *Pennzoil, Co.*, 729 S. W. 2d 768 (Tex. App. 1987); *Grimshaw* v. *Ford Motor Co.*, 119 Cal. App. 3d 757, 174 Cal. Rptr. 348 (1981); Draper, Excessiveness or Inadequacy of Punitive Damages Awarded in Personal Injury or Death Cases, 12 A. L. R. 5th 195 (1993); Schnapper, Judges Against Juries—Appellate Review of Federal Civil Jury Verdicts, 1989 Wis. L. Rev. 237.

### IV

There is a dramatic difference between the judicial review of punitive damages awards under the common law and the scope of review available in Oregon. An Oregon trial judge, or an Oregon appellate court, may order a new trial if the jury was not properly instructed, if error occurred during the trial, or if there is no evidence to support any punitive damages at all. But if the defendant's only basis for relief is the *amount* of punitive damages the jury awarded, Oregon

provides no procedure for reducing or setting aside that award. This has been the law in Oregon at least since 1949 when the State Supreme Court announced its opinion in *Van Lom* v. *Schneiderman*, 187 Ore. 89, 210 P. 2d 461 (1949), definitively construing the 1910 amendment to the Oregon Constitution.[5]

In that case the court held that it had no power to reduce or set aside an award of both compensatory and punitive damages that was admittedly excessive.[6] It recognized that the constitutional amendment placing a limitation on its power was a departure from the traditional common-law approach.[7] That opinion's characterization of Oregon's "lonely eminence" in this regard, *id.*, at 113, 210 P. 2d, at 471, is still an accurate portrayal of its unique position. Every other State in the Union affords postverdict judicial review of the

---

[5] The amended Article VII, §3, of the Oregon Constitution provides: "In actions at law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this State, unless the court can affirmatively say there is no evidence to support the verdict."

[6] "The court is of the opinion that the verdict of $10,000.00 is excessive. Some members of the court think that only the award of punitive damages is excessive; others that both the awards of compensatory and punitive damages are excessive. Since a majority are of the opinion that this court has no power to disturb the verdict, it is not deemed necessary to discuss the grounds for these divergent views." *Van Lom* v. *Schneiderman*, 187 Ore., at 93, 210 P. 2d, at 462 (1949).

[7] "The guaranty of the right to jury trial in suits at common law, incorporated in the Bill of Rights as one of the first ten amendments of the Constitution of the United States, was interpreted by the Supreme Court of the United States to refer to jury trial as it had been theretofore known in England; and so it is that the federal judges, like the English judges, have always exercised the prerogative of granting a new trial when the verdict was clearly against the weight of the evidence, whether it be because excessive damages were awarded or for any other reason. The state courts were conceded similar powers. . . . [U]p to 1910, when the people adopted Art. VII, §3, of our Constitution, there was no state in the union, so far as we are advised, where this method of control of the jury did not prevail." *Id.*, at 112–113, 210 P. 2d, at 471.

amount of a punitive damages award, see *supra*, at 426, and subsequent decisions have reaffirmed Oregon judges' lack of authority to order new trials or other relief to remedy excessive damages. *Fowler* v. *Courtemanche*, 202 Ore. 413, 448, 274 P. 2d 258, 275 (1954) ("If this court were authorized to exercise its common law powers, we would unhesitatingly hold that the award of $35,000 as punitive damages was excessive . . ."); *Tenold* v. *Weyerhaeuser Co.*, 127 Ore. App. 511, 873 P. 2d 413 (1994) (Oregon court cannot examine jury award to ensure compliance with $500,000 statutory limit on noneconomic damages).

Respondent argues that Oregon's procedures do not deviate from common-law practice, because Oregon judges have the power to examine the size of the award to determine whether the jury was influenced by passion and prejudice. This is simply incorrect. The earliest Oregon cases interpreting the 1910 amendment squarely held that Oregon courts lack precisely that power. *Timmins* v. *Hale*, 122 Ore. 24, 43–44, 256 P. 770, 776 (1927); *McCulley* v. *Homestead Bakery, Inc.*, 141 Ore. 460, 465–466, 18 P. 2d 226, 228 (1933). Although dicta in later cases have suggested that the issue might eventually be revisited, see *Van Lom*, 187 Ore., at 106, 210 P. 2d, at 468, the earlier holdings remain Oregon law. No Oregon court for more than half a century has inferred passion and prejudice from the size of a damages award, and no court in more than a decade has even hinted that courts might possess the power to do so.[8] Finally, if Oregon courts

---

[8] The last reported decision to suggest that a new trial might be ordered because the size of the award suggested passion and prejudice was *Trenery* v. *Score*, 45 Ore. App. 611, 615, 609 P. 2d 388, 389 (1980) (noting that "[i]t is doubtful" that passion and prejudice review continues to be available); see also *Foley* v. *Pittenger*, 264 Ore. 310, 503 P. 2d 476 (1972). More recent decisions suggest that the type of passion and prejudice review envisioned by the common law and former Ore. Rev. Stat. § 17.610 (repealed by 1979 Ore. Laws, ch. 284, § 199) is no longer available. See *Tenold* v. *Weyerhaeuser Co.*, 127 Ore. App. 511, 873 P. 2d 413 (1994).

could evaluate the excessiveness of punitive damages awards through passion and prejudice review, the Oregon Supreme Court would have mentioned that power in this very case. Petitioners argued that Oregon procedures were unconstitutional precisely because they failed to provide judicial review of the size of punitive damages awards. The Oregon Supreme Court responded by rejecting the idea that judicial review of the size of punitive damages awards was required by *Haslip.* 316 Ore., at 263, 851 P. 2d, at 1084. As the court noted, two state appellate courts, including the California Supreme Court, had reached the opposite conclusion. *Id.,* at 284, n. 13, 851 P. 2d, at 1096, n. 13. If, as respondent claims, Oregon law provides passion and prejudice review of excessive verdicts, the Oregon Supreme Court would have had a more obvious response to petitioners' argument.

Respondent also argues that Oregon provides adequate review, because the trial judge can overturn a punitive damages award if there is no substantial evidence to support an award of punitive damages. See *Fowler* v. *Courtemanche,* 202 Ore., at 448–449, 274 P. 2d, at 275. This argument is unconvincing, because the review provided by Oregon courts ensures only that there is evidence to support *some* punitive damages, not that there is evidence to support the amount actually awarded. While Oregon's judicial review ensures that punitive damages are not awarded against defendants entirely innocent of conduct warranting exemplary damages, Oregon, unlike the common law, provides no assurance that those whose conduct is sanctionable by punitive damages are not subjected to punitive damages of arbitrary amounts. What we are concerned with is the possibility that a culpable defendant may be unjustly punished; evidence of culpability warranting some punishment is not a substitute for evidence providing at least a rational basis for the particular deprivation of property imposed by the State to deter future wrongdoing.

## V

Oregon's abrogation of a well-established common-law protection against arbitrary deprivations of property raises a presumption that its procedures violate the Due Process Clause. As this Court has stated from its first due process cases, traditional practice provides a touchstone for constitutional analysis. *Murray's Lessee* v. *Hoboken Land & Improvement Co.*, 18 How. 272 (1856); *Tumey* v. *Ohio*, 273 U. S. 510 (1927); *Brown* v. *Mississippi*, 297 U. S. 278 (1936); *In re Winship*, 397 U. S. 358, 361 (1970); *Burnham* v. *Superior Court of Cal., County of Marin*, 495 U. S. 604 (1990); *Pacific Mut. Life Ins. Co.* v. *Haslip*, 499 U. S. 1 (1991). Because the basic procedural protections of the common law have been regarded as so fundamental, very few cases have arisen in which a party has complained of their denial. In fact, most of our due process decisions involve arguments that traditional procedures provide too little protection and that additional safeguards are necessary to ensure compliance with the Constitution. *Ownbey* v. *Morgan*, 256 U. S. 94 (1921); *Burnham* v. *Superior Court of Cal., County of Marin*, 495 U. S. 604 (1990); *Pacific Mut. Life Ins. Co.* v. *Haslip*, 499 U. S. 1 (1991).

Nevertheless, there are a handful of cases in which a party has been deprived of liberty or property without the safeguards of common-law procedure. *Hurtado* v. *California*, 110 U. S. 516 (1884); *Tumey* v. *Ohio*, 273 U. S. 510 (1927); *Brown* v. *Mississippi*, 297 U. S. 278 (1936); *In re Oliver*, 333 U. S. 257 (1948); *In re Winship*, 397 U. S., at 361. When the absent procedures would have provided protection against arbitrary and inaccurate adjudication, this Court has not hesitated to find the proceedings violative of due process. *Tumey* v. *Ohio*, 273 U. S. 510 (1927); *Brown* v. *Mississippi*, 297 U. S. 278 (1936); *In re Oliver*, 333 U. S. 257 (1948); *In re Winship*, 397 U. S., at 361. Of course, not all deviations from established procedures result in constitutional infirmity. As the Court noted in *Hurtado*, to hold all procedural

change unconstitutional "would be to deny every quality of the law but its age, and to render it incapable of progress or improvement." 110 U. S., at 529. A review of the cases, however, suggests that the case before us is unlike those in which abrogations of common-law procedures have been upheld.

In *Hurtado*, for example, examination by a neutral magistrate provided criminal defendants with nearly the same protection as the abrogated common-law grand jury procedure. *Id.*, at 538. Oregon, by contrast, has provided no similar substitute for the protection provided by judicial review of the amount awarded by the jury in punitive damages. Similarly, in *International Shoe Co.* v. *Washington*, 326 U. S. 310 (1945), this Court upheld the extension of state-court jurisdiction over persons not physically present, in spite of contrary well-established prior practice. That change, however, was necessitated by the growth of a new business entity, the corporation, whose ability to conduct business without physical presence had created new problems not envisioned by rules developed in another era. See *Burnham*, 495 U. S., at 617. In addition, the dramatic improvements in communication and transportation made litigation in a distant forum less onerous. No similar social changes suggest the need for Oregon's abrogation of judicial review, nor do improvements in technology render unchecked punitive damages any less onerous. If anything, the rise of large, interstate and multinational corporations has aggravated the problem of arbitrary awards and potentially biased juries.[9]

---

[9] Respondent cites as support for his argument *Chicago, R. I. & P. R. Co.* v. *Cole*, 251 U. S. 54, 55 (1919) (Holmes, J.). In that case, the Court upheld a provision of the Oklahoma Constitution providing that "'the defense of contributory negligence . . . shall . . . be left to the jury.'" *Chicago, R. I.* provides little support for respondent's case. Justice Holmes' reasoning relied on the fact that a State could completely abolish the defense of contributory negligence. This case, however, is different,

Punitive damages pose an acute danger of arbitrary deprivation of property. Jury instructions typically leave the jury with wide discretion in choosing amounts, and the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences. Judicial review of the amount awarded was one of the few procedural safeguards which the common law provided against that danger. Oregon has removed that safeguard without providing any substitute procedure and without any indication that the danger of arbitrary awards has in any way subsided over time. For these reasons, we hold that Oregon's denial of judicial review of the size of punitive damages awards violates the Due Process Clause of the Fourteenth Amendment.[10]

## VI

Respondent argues that Oregon has provided other safeguards against arbitrary awards and that, in any event, the exercise of this unreviewable power by the jury is consistent with the jury's historic role in our judicial system.

Respondent points to four safeguards provided in the Oregon courts: the limitation of punitive damages to the amount specified in the complaint, the clear and convincing standard of proof, preverdict determination of maximum allowable punitive damages, and detailed jury instructions. The first,

---

because the *TXO* and *Haslip* opinions establish that States cannot abolish limits on the award of punitive damages.

[10] This case does not pose the more difficult question of what standard of review is constitutionally required. Although courts adopting a more deferential approach use different verbal formulations, there may not be much practical difference between review that focuses on "passion and prejudice," "gross excessiveness," or whether the verdict was "against the great weight of the evidence." All of these may be rough equivalents of the standard this Court articulated in *Jackson* v. *Virginia,* 443 U. S. 307, 324 (1979) (whether "no rational trier of fact could have" reached the same verdict).

limitation of punitive damages to the amount specified, is hardly a constraint at all, because there is no limit to the amount the plaintiff can request, and it is unclear whether an award exceeding the amount requested could be set aside. See *Tenold* v. *Weyerhaeuser Co.*, 127 Ore. App. 511, 873 P. 2d 413 (1994) (Oregon Constitution bars court from examining jury award to ensure compliance with $500,000 statutory limit on noneconomic damages). The second safeguard, the clear and convincing standard of proof, is an important check against unwarranted imposition of punitive damages, but, like the "no substantial evidence" review discussed *supra*, at 429, it provides no assurance that those whose conduct is sanctionable by punitive damages are not subjected to punitive damages of arbitrary amounts. Regarding the third purported constraint, respondent cites no cases to support the idea that Oregon courts do or can set maximum punitive damages awards in advance of the verdict. Nor are we aware of any court which implements that procedure. Respondent's final safeguard, proper jury instruction, is a well-established and, of course, important check against excessive awards. The problem that concerns us, however, is the possibility that a jury will not follow those instructions and may return a lawless, biased, or arbitrary verdict.[11]

---

[11] Respondent also argues that empirical evidence supports the effectiveness of these safeguards. It points to the analysis of an *amicus* showing that the average punitive damages award in a products liability case in Oregon is less than the national average. Brief for Trial Lawyers for Public Justice as *Amicus Curiae*. While we welcome respondent's introduction of empirical evidence on the effectiveness of Oregon's legal rules, its statistics are undermined by the fact that the Oregon average is computed from only two punitive damages awards. It is well known that one cannot draw valid statistical inferences from such a small number of observations.

Empirical evidence, in fact, supports the importance of judicial review of the size of punitive damages awards. The most exhaustive study of punitive damages establishes that over half of punitive damages awards were appealed, and that more than half of those appealed resulted in reductions or reversals of the punitive damages. In over 10% of the cases

In support of his argument that there is a historic basis for making the jury the final arbiter of the amount of punitive damages, respondent calls our attention to early civil and criminal cases in which the jury was allowed to judge the law as well as the facts. See *Johnson* v. *Louisiana*, 406 U. S. 356, 374, n. 11 (1972) (Powell, J., concurring). As we have already explained, in civil cases, the jury's discretion to determine the amount of damages was constrained by judicial review.[12] The criminal cases do establish—as does our practice today—that a jury's arbitrary decision to acquit a defendant charged with a crime is completely unreviewable. There is, however, a vast difference between arbitrary grants of freedom and arbitrary deprivations of liberty or property. The Due Process Clause has nothing to say about the former, but its whole purpose is to prevent the latter. A decision to punish a tortfeasor by means of an exaction of

appealed, the judge found the damages to be excessive. Rustad, In Defense of Punitive Damages in Products Liability: Testing Tort Anecdotes with Empirical Data, 78 Iowa L. Rev. 1, 57 (1992). The above statistics understate the importance of judicial review, because they consider only appellate review, rather than review by the trial court, which may be even more significant, and because they ignore the fact that plaintiffs often settle for less than the amount awarded because they fear appellate reduction of damages. See *ibid.*

[12] Judicial deference to jury verdicts may have been stronger in 18th-century America than in England, and judges' power to order new trials for excessive damages more contested. See Nelson, The Eighteenth-Century Background of John Marshall's Constitutional Jurisprudence, 76 Mich. L. Rev. 893, 904–917 (1978); M. Horwitz, The Transformation of American Law, 1780–1860, p. 142 (1977). Nevertheless, because this case concerns the Due Process Clause of the Fourteenth Amendment, 19th-century American practice is the "crucial time for present purposes." *Burnham* v. *Superior Court of Cal., County of Marin*, 495 U. S. 604, 611 (1990). As demonstrated *supra*, at 424–426, by the time the Fourteenth Amendment was ratified in 1868, the power of judges to order new trials for excessive damages was well established in American courts. In addition, the idea that jurors can find law as well as fact is not inconsistent with judicial review for excessive damages. See *Coffin* v. *Coffin*, 4 Mass. 1, 25, 41 (1808).

exemplary damages is an exercise of state power that must comply with the Due Process Clause of the Fourteenth Amendment. The common-law practice, the procedures applied by every other State, the strong presumption favoring judicial review that we have applied in other areas of the law, and elementary considerations of justice all support the conclusion that such a decision should not be committed to the unreviewable discretion of a jury.

The judgment is reversed, and the case is remanded to the Oregon Supreme Court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE SCALIA, concurring.

I join the opinion of the Court, but a full explanation of why requires that I supplement briefly the description of what has occurred here.

Before the 1910 amendment to Article VII, § 3, of the Oregon Constitution, Oregon courts had developed and were applying common-law standards that limited the size of damages awards. See, *e. g., Adcock* v. *Oregon R. Co.,* 45 Ore. 173, 179–182, 77 P. 78, 80 (1904) (approving trial court's decision to grant a remittitur because the jury's damages award was excessive); see also *Van Lom* v. *Schneiderman,* 187 Ore. 89, 96–98, 112–113, 210 P. 2d 461, 464, 471 (1949). The 1910 amendment, by its terms, did not eliminate those substantive standards but altered the procedures of judicial review: "*[N]o fact tried by a jury shall be otherwise re-examined in any court of this state,* unless the court can affirmatively say there is no evidence to support the verdict" (emphasis added). The Oregon courts appear to believe that a state-law "reasonableness" limit upon the amount of punitive damages subsists, but cannot be enforced through the process of judicial review. In *Van Lom,* for example, the Oregon Supreme Court had no trouble concluding that the damages award was excessive, see 187 Ore., at 91–93, 210 P. 2d, at

462, but held that the amendment had removed its "power to correct a miscarriage of justice by ordering a new trial," *id.*, at 112–113, 210 P. 2d, at 471.

The Court's opinion establishes that the right of review eliminated by the amendment was a procedure traditionally accorded at common law. The deprivation of property without observing (or providing a reasonable substitute for) an important traditional procedure for enforcing state-prescribed limits upon such deprivation violates the Due Process Clause.

JUSTICE GINSBURG, with whom THE CHIEF JUSTICE joins, dissenting.

In product liability cases, Oregon guides and limits the factfinder's discretion on the availability and amount of punitive damages. The plaintiff must establish entitlement to punitive damages, under specific substantive criteria, by clear and convincing evidence. Where the factfinder is a jury, its decision is subject to judicial review to this extent: The trial court, or an appellate court, may nullify the verdict if reversible error occurred during the trial, if the jury was improperly or inadequately instructed, or if there is no evidence to support the verdict. Absent trial error, and if there is evidence to support the award of punitive damages, however, Oregon's Constitution, Article VII, § 3, provides that a properly instructed jury's verdict shall not be reexamined.[1] Oregon's procedures, I conclude, are adequate to pass the Constitution's due process threshold. I therefore dissent from the Court's judgment upsetting Oregon's disposition in this case.

---

[1] Article VII, § 3, of the Oregon Constitution reads:

"In actions at law, where the value in controversy shall exceed $200, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict."

I

A

To assess the constitutionality of Oregon's scheme, I turn first to this Court's recent opinions in *Pacific Mut. Life Ins. Co.* v. *Haslip*, 499 U. S. 1 (1991), and *TXO Production Corp.* v. *Alliance Resources Corp.*, 509 U. S. 443 (1993). The Court upheld punitive damage awards in both cases, but indicated that due process imposes an outer limit on remedies of this type. Significantly, neither decision declared any specific procedures or substantive criteria essential to satisfy due process. In *Haslip*, the Court expressed concerns about "unlimited jury discretion—or unlimited judicial discretion for that matter—in the fixing of punitive damages," but refused to "draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable." 499 U. S., at 18. Regarding the components of "the constitutional calculus," the Court simply referred to "general concerns of reasonableness and [the need for] adequate guidance from the court when the case is tried to a jury." *Ibid.*

And in *TXO*, a majority agreed that a punitive damage award may be so grossly excessive as to violate the Due Process Clause. 509 U. S., at 453–454, 458 (plurality opinion); *id.*, at 466–467 (KENNEDY, J., concurring in part and concurring in judgment); *id.*, at 479–480 (O'CONNOR, J., dissenting). In the plurality's view, however, "a judgment that is a product" of "fair procedures . . . is entitled to a strong presumption of validity"; this presumption, "persuasive reasons" indicated, "should be irrebuttable, . . . or virtually so." *Id.*, at 457, citing *Haslip*, 499 U. S., at 24–40 (SCALIA, J., concurring in judgment), and *id.*, at 40–42 (KENNEDY, J., concurring in judgment). The opinion stating the plurality position recalled *Haslip*'s touchstone: A "'concern [for] reasonableness'" is what due process essentially requires. 509

U. S., at 458, quoting *Haslip*, 499 U. S., at 18. Writing for the plurality, JUSTICE STEVENS explained:

> "[W]e do not suggest that a defendant has a substantive due process right to a correct determination of the 'reasonableness' of a punitive damages award. As JUSTICE O'CONNOR points out, state law generally imposes a requirement that punitive damages be 'reasonable.' A violation of a state law 'reasonableness' requirement would not, however, necessarily establish that the award is so 'grossly excessive' as to violate the Federal Constitution." 509 U. S., at 458, n. 24 (citation omitted).

### B

The procedures Oregon's courts followed in this case satisfy the due process limits indicated in *Haslip* and *TXO;* the jurors were adequately guided by the trial court's instructions, and Honda has not maintained, in its full presentation to this Court, that the award in question was "so 'grossly excessive' as to violate the Federal Constitution." *TXO,* 509 U. S., at 458, n. 24.[2]

### 1

Several preverdict mechanisms channeled the jury's discretion more tightly in this case than in either *Haslip* or *TXO.* First, providing at least some protection against unguided, utterly arbitrary jury awards, respondent Karl Oberg was permitted to recover no more than the amounts specified in the complaint, $919,390.39 in compensatory damages and $5 million in punitive damages. See Ore. Rule Civ. Proc. 18B (1994); *Wiebe* v. *Seely,* 215 Ore. 331, 355–358, 335 P. 2d 379, 391 (1959); *Lovejoy Specialty Hosp.* v. *Advocates for Life, Inc.,* 121 Ore. App. 160, 167, 855 P. 2d 159, 163 (1993). The trial court properly instructed the jury on this damage

---

[2] The Supreme Court of Oregon noted that "procedural due process in the context of an award of punitive damages relates to the requirement that the procedure employed in making that award be fundamentally fair," while the substantive limit declared by this Court relates to the size of the award. 316 Ore. 263, 280, n. 10, 851 P. 2d 1084, 1094, n. 10 (1993).

cap. See 316 Ore. 263, 282, n. 11, 851 P. 2d 1084, 1095, n. 11 (1993). No provision of Oregon law appears to preclude the defendant from seeking an instruction setting a lower cap, if the evidence at trial cannot support an award in the amount demanded. Additionally, if the trial judge relates the incorrect maximum amount, a defendant who timely objects may gain modification or nullification of the verdict. See *Timber Access Industries Co.* v. *U. S. Plywood-Champion Papers, Inc.*, 263 Ore. 509, 525–528, 503 P. 2d 482, 490–491 (1972).[3]

Second, Oberg was not allowed to introduce evidence regarding Honda's wealth until he "presented evidence sufficient to justify to the court a prima facie claim of punitive damages." Ore. Rev. Stat. § 41.315(2) (1991); see also § 30.925(2) ("During the course of trial, evidence of the defendant's ability to pay shall not be admitted unless and until the party entitled to recover establishes a prima facie right to recover [punitive damages]."). This evidentiary rule is designed to lessen the risk "that juries will use their verdicts to express biases against big businesses." *Ante*, at 432; see also Ore. Rev. Stat. § 30.925(3)(g) (1991) (requiring factfinder to take into account "[t]he total deterrent effect of other punishment imposed upon the defendant as a result of the misconduct").

Third, and more significant, as the trial court instructed the jury, Honda could not be found liable for punitive damages unless Oberg established by "clear and convincing evidence" that Honda "show[ed] wanton disregard for the health, safety and welfare of others." § 30.925 (governing product liability actions); see also § 41.315(1) ("Except as otherwise specifically provided by law, a claim for punitive damages shall be established by clear and convincing evidence.").

---

[3] The Court's contrary suggestion, *ante*, at 433, is based on *Tenold* v. *Weyerhaeuser Co.*, 127 Ore. App. 511, 873 P. 2d 413 (1994), a decision by an intermediate appellate court, in which the defendant does not appear to have objected to the trial court's instructions as inaccurate, incomplete, or insufficient, for failure to inform the jury concerning a statutorily mandated $500,000 cap on noneconomic damages.

"[T]he clear-and-convincing evidence requirement," which is considerably more rigorous than the standards applied by Alabama in *Haslip*[4] and West Virginia in *TXO*,[5] "constrain[s] the jury's discretion, limiting punitive damages to the more egregious cases." *Haslip*, 499 U. S., at 58 (O'CONNOR, J., dissenting). Nothing in Oregon law appears to preclude a new trial order if the trial judge, informed by the jury's verdict, determines that his charge did not adequately explain what the "clear and convincing" standard means. See Ore. Rule Civ. Proc. 64G (1994) (authorizing court to grant new trial "on its own initiative").

Fourth, and perhaps most important, in product liability cases, Oregon requires that punitive damages, if any, be awarded based on seven substantive criteria, set forth in Ore. Rev. Stat. § 30.925(3) (1991):

> "(a) The likelihood at the time that serious harm would arise from the defendant's misconduct;
>
> "(b) The degree of the defendant's awareness of that likelihood;
>
> "(c) The profitability of the defendant's misconduct;
>
> "(d) The duration of the misconduct and any concealment of it;
>
> "(e) The attitude and conduct of the defendant upon discovery of the misconduct;
>
> "(f) The financial condition of the defendant; and
>
> "(g) The total deterrent effect of other punishment imposed upon the defendant as a result of the misconduct, including, but not limited to, punitive damage awards to

---

[4] The *Haslip* jury was told that it could award punitive damages if " 'reasonably satisfied from the evidence' " that the defendant committed fraud. *Pacific Mut. Life Ins. Co.* v. *Haslip*, 499 U. S. 1, 6, n. 1 (1991).

[5] The *TXO* jury was instructed to apply a preponderance of the evidence standard. See *TXO Production Corp.* v. *Alliance Resources Corp.*, 509 U. S. 443, 463, n. 29 (1993).

persons in situations similar to the claimant's and the severity of criminal penalties to which the defendant has been or may be subjected."

These substantive criteria, and the precise instructions detailing them,[6] gave the jurors "adequate guidance" in making

[6] The trial court instructed the jury:

"'Punitive damages: If you have found that plaintiff is entitled to general damages, you must then consider whether to award punitive damages. Punitive damages may be awarded to the plaintiff in addition to general damages to punish wrongdoers and to discourage wanton misconduct.

"'In order for plaintiff to recover punitive damages against the defendant[s], the plaintiff must prove by clear and convincing evidence that defendant[s have] shown wanton disregard for the health, safety, and welfare of others. . . .

"'If you decide this issue against the defendant[s], you may award punitive damages, although you are not required to do so, because punitive damages are discretionary.

"'In the exercise of that discretion, you shall consider evidence, if any, of the following:

"'First, the likelihood at the time of the sale [of the all-terrain vehicle] that serious harm would arise from defendants' misconduct.

"'Number two, the degree of the defendants' awareness of that likelihood.

"'Number three, the duration of the misconduct.

"'Number four, the attitude and conduct of the defendant[s] upon notice of the alleged condition of the vehicle.

"'Number five, the financial condition of the defendant[s].'" 316 Ore., at 282, n. 11, 851 P. 2d, at 1095, n. 11.

The trial judge did not instruct the jury on § 30.925(3)(c), "profitability of [Honda's] misconduct," or § 30.925(3)(g), the "total deterrent effect of other punishment" to which Honda was subject. Honda objected to an instruction on factor (3)(c), which it argued was phrased "to assume the existence of misconduct," and expressly waived an instruction on factor (3)(g), on the ground that it had not previously been subject to punitive damages. App. to Brief for Plaintiff-Respondent in Opposition in No. S38436 (Ore.), p. 2. In its argument before the Supreme Court of Oregon, Honda did not contend that the trial court failed to instruct the jury concerning the "[§ 30.925(3)] criteria," or "that the jury did not properly apply those criteria." 316 Ore., at 282, n. 11, 851 P. 2d, at 1095, n. 11.

their award, see *Haslip*, 499 U. S., at 18, far more guidance than their counterparts in *Haslip*[7] and *TXO*[8] received. In *Haslip*, for example, the jury was told only the purpose of

---

[7] The trial judge in *Haslip* instructed the jury:

"Now, if you find that fraud was perpetrated then in addition to compensatory damages you may in your discretion, when I use the word discretion, I say you don't have to even find fraud, you wouldn't have to, but you may, the law says you may award an amount of money known as punitive damages.

"This amount of money is awarded to the plaintiff but it is not to compensate the plaintiff for any injury. It is to punish the defendant. Punitive means to punish or it is also called exemplary damages, which means to make an example. So, if you feel or not feel, but if you are reasonably satisfied from the evidence that the plaintiff[s] . . . ha[ve] had a fraud perpetrated upon them and as a direct result they were injured [then] in addition to compensatory damages you may in your discretion award punitive damages.

"Now, the purpose of awarding punitive or exemplary damages is to allow money recovery to the plaintiffs, . . . by way of punishment to the defendant and for the added purpose of protecting the public by deterring the defendant and others from doing such wrong in the future. Imposition of punitive damages is entirely discretionary with the jury, that means you don't have to award it unless this jury feels that you should do so.

"Should you award punitive damages, in fixing the amount, you must take into consideration the character and the degree of the wrong as shown by the evidence and necessity of preventing similar wrong." 499 U. S., at 6, n. 1 (internal quotation marks omitted).

[8] The jury instruction in *TXO* read:

" 'In addition to actual or compensatory damages, the law permits the jury, under certain circumstances, to make an award of punitive damages, in order to punish the wrongdoer for his misconduct, to serve as an example or warning to others not to engage in such conduct and to provide additional compensation for the conduct to which the injured parties have been subjected.

" 'If you find from a preponderance of the evidence that TXO Production Corp. is guilty of wanton, wilful, malicious or reckless conduct which shows an indifference to the right of others, then you may make an award of punitive damages in this case.

" 'In assessing punitive damages, if any, you should take into consideration all of the circumstances surrounding the particular occurrence, including the nature of the wrongdoing, the extent of the harm inflicted, the

punitive damages (punishment and deterrence) and that an award was discretionary, not compulsory. We deemed those instructions, notable for their generality, constitutionally sufficient. 499 U. S., at 19–20.

The Court's opinion in *Haslip* went on to describe the checks Alabama places on the jury's discretion *postverdict*— through excessiveness review by the trial court, and appellate review, which tests the award against specific substantive criteria. *Id.*, at 20–23. While postverdict review of that character is not available in Oregon, the seven factors against which Alabama's Supreme Court tests punitive awards[9] strongly resemble the statutory criteria Oregon's juries are instructed to apply. 316 Ore., at 283, and n. 12, 851 P. 2d, at 1095–1096, and n. 12. And this Court has often acknowledged, and generally respected, the presumption that juries follow the instructions they are given. See, *e. g.*,

---

intent of the party committing the act, the wealth of the perpetrator, as well as any mitigating circumstances which may operate to reduce the amount of the damages. The object of such punishment is to deter TXO Production Corp. and others from committing like offenses in the future. Therefore the law recognizes that to in fact deter such conduct may require a larger fine upon one of large means than it would upon one of ordinary means under the same or similar circumstances.'" 509 U. S., at 463, n. 29.

[9] The Alabama factors are:

"(a) whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred; (b) the degree of reprehensibility of the defendant's conduct, the duration of that conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct; (c) the profitability to the defendant of the wrongful conduct and the desirability of removing that profit and of having the defendant also sustain a loss; (d) the 'financial position' of the defendant; (e) all the costs of litigation; (f) the imposition of criminal sanctions on the defendant for its conduct, these to be taken in mitigation; and (g) the existence of other civil awards against the defendant for the same conduct, these also to be taken in mitigation." 499 U. S., at 21–22, citing *Green Oil Co.* v. *Hornsby,* 539 So. 2d 218, 223–224 (Ala. 1989), and *Central Alabama Elec. Cooperative* v. *Tapley,* 546 So. 2d 371, 376–377 (Ala. 1989).

*Shannon* v. *United States, post,* at 584–585; *Richardson* v. *Marsh,* 481 U. S. 200, 206 (1987).

As the Supreme Court of Oregon observed, *Haslip* "determined only that the Alabama procedure, as a whole and in its net effect, did not violate the Due Process Clause." 316 Ore., at 284, 851 P. 2d, at 1096. The Oregon court also observed, correctly, that the Due Process Clause does not require States to subject punitive damage awards to a form of postverdict review "that includes the possibility of remittitur."[10] *Ibid.* Because Oregon requires the factfinder to apply § 30.925's objective criteria, moreover, its procedures are perhaps more likely to prompt rational and fair punitive damage decisions than are the *post hoc* checks employed in jurisdictions following Alabama's pattern. See *Haslip,* 499 U. S., at 52 (O'CONNOR, J., dissenting) ("[T]he standards [applied by the Alabama Supreme Court] could assist juries to make fair, rational decisions. Unfortunately, Alabama courts do not give the[se] factors to the jury. Instead, the jury has standardless discretion to impose punitive damages whenever and in whatever amount it wants."). As the Oregon court concluded, "application of objective criteria ensures that sufficiently definite and meaningful constraints are imposed on the finder of fact." 316 Ore., at 283, 851 P. 2d, at 1096. The Oregon court also concluded that the statutory criteria, by adequately guiding the jury, worked to "ensur[e] that the resulting award is not disproportionate to a defendant's conduct and to the need to punish and deter." *Ibid.*[11]

---

[10] Indeed, the compatibility of the remittitur with the Seventh Amendment was not settled until *Dimick* v. *Schiedt,* 293 U. S. 474 (1935).

[11] Oregon juries, reported decisions indicate, rarely award punitive damages. Between 1965 and the present, awards of punitive damages have been reported in only two product liability cases involving Oregon law, including this one. See Brief for Trial Lawyers for Public Justice as *Amicus Curiae* 10, and n. 7. The punitive award in this case was about 5.4 times the amount of compensatory damages and about 258 times the plaintiff's out-of-pocket expenses. This amount is not far distant from

2

The Supreme Court of Oregon's conclusions are buttressed by the availability of at least some postverdict judicial review of punitive damage awards. Oregon's courts ensure that there is evidence to support the verdict:

> "If there is no evidence to support the jury's decision— in this context, no evidence that the statutory prerequisites for the award of punitive damages were met—then the trial court or the appellate courts can intervene to vacate the award. See ORCP 64B(5) (trial court may grant a new trial if the evidence is insufficient to justify the verdict or is against law); *Hill* v. *Garner,* 277 Ore. 641, 643, 561 P. 2d 1016 (1977) (judgment notwithstanding the verdict is to be granted when there is no evidence to support the verdict); *State* v. *Brown,* 306 Ore. 599, 604, 761 P. 2d 1300 (1988) (a fact decided by a jury may be re-examined when a reviewing court can say affirmatively that there is no evidence to support the jury's decision)." *Id.,* at 285, 851 P. 2d, at 1096–1097.

The State's courts have shown no reluctance to strike punitive damage awards in cases where punitive liability is not established, so that defendant qualifies for judgment on that issue as a matter of law. See, *e. g., Badger* v. *Paulson Investment Co.,* 311 Ore. 14, 28–30, 803 P. 2d 1178, 1186–1187 (1991); *Andor* v. *United Airlines,* 303 Ore. 505, 739 P. 2d 18 (1987); *Schmidt* v. *Pine Tree Land Development Co.,* 291 Ore. 462, 631 P. 2d 1373 (1981).

In addition, punitive damage awards may be set aside because of flaws in jury instructions. 316 Ore., at 285, 851 P. 2d, at 1097. See, *e. g., Honeywell* v. *Sterling Furniture*

---

the award upheld in *Haslip,* which was more than 4 times the amount of compensatory damages and more than 200 times the plaintiff's out-of-pocket expenses. See 499 U. S., at 23. The $10 million award this Court sustained in *TXO,* in contrast, was more than 526 times greater than the actual damages of $19,000. 509 U. S., at 453.

*Co.,* 310 Ore. 206, 210–214, 797 P. 2d 1019, 1021–1023 (1990) (setting aside punitive damage award because it was prejudicial error to instruct jury that a portion of any award would be used to pay plaintiff's attorney's fees and that another portion would go to State's common injury fund). As the Court acknowledges, "proper jury instructio[n] is a well-established and, of course, important check against excessive awards." *Ante,* at 433.

## II

In short, Oregon has enacted legal standards confining punitive damage awards in product liability cases. These state standards are judicially enforced by means of comparatively comprehensive preverdict procedures but markedly limited postverdict review, for Oregon has elected to make factfinding, once supporting evidence is produced, the province of the jury. Cf. *Chicago, R. I. & P. R. Co.* v. *Cole,* 251 U. S. 54, 56 (1919) (upholding against due process challenge Oklahoma Constitution's assignment of contributory negligence and assumption of risk defenses to jury's unreviewable decision; Court recognized State's prerogative to "confer larger powers upon a jury than those that generally prevail"); *Minnesota* v. *Clover Leaf Creamery Co.,* 449 U. S. 456, 479 (1981) (STEVENS, J., dissenting) (observing that "allocation of functions within the structure of a state government" is ordinarily "a matter for the State to determine"). The Court today invalidates this choice, largely because it concludes that English and early American courts generally provided judicial review of the size of punitive damage awards. See *ante,* at 421–426. The Court's account of the relevant history is not compelling.

## A

I am not as confident as the Court about either the clarity of early American common law or its import. Tellingly, the Court barely acknowledges the large authority exercised by American juries in the 18th and 19th centuries. In the early

years of our Nation, juries "usually possessed the power to determine both law and fact." Nelson, The Eighteenth-Century Background of John Marshall's Constitutional Jurisprudence, 76 Mich. L. Rev. 893, 905 (1978); see, *e. g., Georgia v. Brailsford,* 3 Dall. 1, 4 (1794) (Chief Justice John Jay, trying case in which State was party, instructed jury it had authority "to determine the law as well as the fact in controversy").[12] And at the time trial by jury was recognized as the constitutional right of parties "[i]n [s]uits at common law," U. S. Const., Amdt. 7, the assessment of "uncertain damages" was regarded, generally, as exclusively a jury function. See Note, Judicial Assessment of Punitive Damages, the Seventh Amendment, and the Politics of Jury Power, 91 Colum. L. Rev. 142, 156, and n. 69 (1991); see also *id.,* at 156–158, 163, and n. 112.

More revealing, the Court notably contracts the scope of its inquiry. It asks: Did common-law judges claim the power to overturn jury verdicts they viewed as excessive? But full and fair historical inquiry ought to be wider. The Court should inspect, comprehensively and comparatively, the procedures employed—at trial *and* on appeal—to fix the amount of punitive damages.[13] Evaluated in this manner, Oregon's scheme affords defendants like Honda *more* procedural safeguards than 19th-century law provided.

As detailed *supra,* at 440–441, Oregon instructs juries to decide punitive damage issues based on seven substantive factors and a clear and convincing evidence standard. When the Fourteenth Amendment was adopted in 1868, in contrast, "no particular procedures were deemed necessary to circumscribe a jury's discretion regarding the award of [pu-

---

[12] Not until *Sparf* v. *United States,* 156 U. S. 51, 102 (1895), was the jury's power to decide the law conclusively rejected for the federal courts. See Riggs, Constitutionalizing Punitive Damages: The Limits of Due Process, 52 Ohio St. L. J. 859, 900 (1991).

[13] An inquiry of this order is akin to the one made in *Haslip.* See *supra,* at 443–444.

nitive] damages, or their amount." *Haslip*, 499 U. S., at 27 (SCALIA, J., concurring in judgment). The responsibility entrusted to the jury surely was not guided by instructions of the kind Oregon has enacted. Compare 1 J. Sutherland, Law of Damages 720 (1882) ("If, in committing the wrong complained of, [the defendant] acted recklessly, or wilfully and maliciously, with a design to oppress and injure the plaintiff, the jury in fixing the damages may disregard the rule of compensation; and, beyond that, may, as a punishment of the defendant, and as a protection to society against a violation of personal rights and social order, award such additional damages as in their discretion they may deem proper."), with Ore. Rev. Stat. § 30–925 (1991) (requiring jury to consider, *inter alia*, "likelihood at the time that serious harm would arise from the defendant's misconduct"; "degree of the defendant's awareness of that likelihood"; "profitability of the defendant's misconduct"; "duration of the misconduct and any concealment of it").

Furthermore, common-law courts reviewed punitive damage verdicts extremely deferentially, if at all. See, *e. g., Day* v. *Woodworth*, 13 How. 363, 371 (1852) (assessment of "exemplary, punitive, or vindictive damages . . . has been always left to the discretion of the jury, as the degree of punishment to be thus inflicted must depend on the peculiar circumstances of each case"); *Missouri Pacific R. Co.* v. *Humes*, 115 U. S. 512, 521 (1885) ("[t]he discretion of the jury in such cases is not controlled by any very definite rules"); *Barry* v. *Edmunds*, 116 U. S. 550, 565 (1886) (in "actions for torts where no precise rule of law fixes the recoverable damages, it is the peculiar function of the jury to determine the amount by their verdict"). True, 19th-century judges occasionally asserted that they had authority to overturn damage awards upon concluding, from the size of an award, that the jury's decision must have been based on "partiality" or "passion and prejudice." *Ante*, at 425. But courts rarely *exer-*

*cised* this authority. See T. Sedgwick, Measure of Damages 707 (5th ed. 1869) (power "very sparingly used").

### B

Because Oregon's procedures assure "adequate guidance from the court when the case is tried to a jury," *Haslip*, 499 U. S., at 18, this Court has no cause to disturb the judgment in this instance, for Honda presses here only a *procedural* due process claim. True, in a footnote to its petition for certiorari, not repeated in its briefs, Honda attributed to this Court an "assumption that procedural due process requires [judicial] review of *both* federal substantive due process and state-law excessiveness challenges to the size of an award." Pet. for Cert. 16, n. 10 (emphasis in original). But the assertion regarding "state-law excessiveness challenges" is extraordinary, for this Court has never held that the Due Process Clause requires a State's courts to police jury factfindings to ensure their conformity with state law. See *Chicago, R. I. & P. R. Co.* v. *Cole*, 251 U. S., at 56. And, as earlier observed, see *supra*, at 438, the plurality opinion in *TXO* disavowed the suggestion that a defendant has a federal due process right to a correct determination under state law of the "reasonableness" of a punitive damages award. 509 U. S., at 458, n. 24.

Honda further asserted in its certiorari petition footnote:

> "Surely . . . due process (not to mention Supremacy Clause principles) requires, at a minimum, that state courts entertain and pass on the federal-law contention that a particular punitive verdict is so grossly excessive as to violate substantive due process. Oregon's refusal to provide even that limited form of review is particularly indefensible." Pet. for Cert. 16, n. 10.

But Honda points to no definitive Oregon pronouncement postdating this Court's precedent-setting decisions in *Haslip*

and *TXO* demonstrating the hypothesized refusal to pass on a federal-law contention.[14]

It may be that Oregon's procedures guide juries so well that the "grossly excessive" verdict Honda projects in its certiorari petition footnote never materializes. Cf. *supra*, at 444, n. 11 (between 1965 and the present, awards of punitive damages in Oregon have been reported in only two product liability cases, including this one). If, however, in some future case, a plea is plausibly made that a particular punitive damage award is not merely excessive, but "so 'grossly excessive' as to violate the Federal Constitution," *TXO*, 509 U. S., at 458, n. 24, and Oregon's judiciary nevertheless insists that it is powerless to consider the plea, this Court might have cause to grant review. Cf. *Testa* v. *Katt*, 330 U. S. 386 (1947) (ruling on obligation of state courts to enforce federal law). No such case is before us today, nor does Honda, in this Court, maintain otherwise. See 316 Ore., at 286, n. 14, 851 P. 2d, at 1097, n. 14; *supra*, at 444–445, n. 11 (size of award against Honda does not appear to be out of line with awards upheld in *Haslip* and *TXO*).

To summarize: Oregon's procedures adequately guide the jury charged with the responsibility to determine a plaintiff's qualification for, and the amount of, punitive damages, and on that account do not deny defendants procedural due process; Oregon's Supreme Court correctly refused to rule that "an award of punitive damages, to comport with the requirements of the Due Process Clause, *always* must be subject to a form of post-verdict or appellate review" for excessiveness, 316 Ore., at 284, 851 P. 2d, at 1096 (emphasis

---

[14] In its 1949 decision in *Van Lom* v. *Schneiderman*, 187 Ore. 89, 210 P. 2d 461, the Supreme Court of Oregon merely held that it lacked authority to order a new trial even though an award of damages was excessive under *state law*. See *ante*, at 435–436 (SCALIA, J., concurring). No federal limit had yet been recognized, and the *Van Lom* court had no occasion to consider its obligation to check jury verdicts deemed excessive under *federal law*.

added); the verdict in this particular case, considered in light of this Court's decisions in *Haslip* and *TXO*, hardly appears "so 'grossly excessive' as to violate the substantive component of the Due Process Clause," *TXO*, 509 U. S., at 458. Accordingly, the Court's procedural directive to the state court is neither necessary nor proper. The Supreme Court of Oregon has not refused to enforce federal law, and I would affirm its judgment.