**CALIFORNIA TEACHERS
ASSOCIATION, et al.,
Plaintiffs,**

v.

**Gray DAVIS, et al., Defendants.**

**No. CV 98–9694 ER(CWX).**

United States District Court,
C.D. California.

Sept. 8, 1999.

Beverly Tucker, Priscilla S Winslow, Diane Ross, California Teachers Association, Burlingame, CA, Glenn Rothner, Julia Harumi Mass, Rothner Segall & Greenstone, Pasadena, CA, Elliot M Mincberg, Lawrence S Ottinger, Nabe Amae & Cafapbe, Washington, DC, for California Teachers Association, Norma Steiner, Irella Perez, Kristin Worthman, plaintiffs.

Glenn Rothner, Julia Harumi Mass, Rothner Segall & Greenstone, Pasadena, CA, Elliot M Mincberg, Lawrence S Ottinger, Nabe Amae & Cafapbe, Washington, DC, for Association of Mexican American Educators, California Association for Asian–Pacific Bilingual Education, National Association of Bilingual Educators, plaintiffs.

Karl Manheim, Loyola Law School, Los Angeles, CA, Glenn Rothner, Rothner Segall & Greenstone, Pasadena, CA, Elliot M Mincberg, Lawrence S Ottinger, Nabe Amae & Cafapbe, Washington, DC, for Emily Palacio, Association of California, School Administrators, plaintiffs.

Charlton G Holland, III, John Hideki Sugiyama, Donald P Cole, CAAG Office of Attorney General of California, San Francisco, CA, for Pete Wilson, State Board of Education, and its members, Yvonne W Larson, Robert L Trigg, Timothy C Draper, Kathryn Dronenberg, Marion Joseph, Megan Kephart, Marion McDowell, Janet Nicholas, Gerti B Thomas, Marina Tse, defendants.

Charlton G Holland, III, John Hideki Sugiyama, Donald P Cole, CAAG Office of Attorney General of California, San Francisco, CA, Michael E. Hersher, Allan Keown, California State Department of Education, Sacramento, CA, for Delaine Eastin, defendant.

Mark T Gallagher, Sharon Browne, Pacific Legal Foundation, Sacramento, CA, for Ron Unz, Sylvia NMI Martinez, Angelina Morfin, Center for Equal Opportunity, intervenor defendants.

Mark T Gallagher, Sharon Browne, Eric Grant, Pacific Legal Foundation, Sacramento, CA, for Sarina Frias, intervenor defendant.

## MEMORANDUM OPINION

RAFEEDIE, Senior District Judge.

The Court has read and considered the papers filed in connection with the motion to dismiss brought by the Defendant State Board of Education and its members, and the motion for summary judgment brought by the Plaintiffs, and has considered the arguments of counsel at the hearing on the matter, and now HEREBY GRANTS the Defendant's motion to dismiss, construed as a motion for summary judgment, and HEREBY DENIES the Plaintiffs' motion for summary judgment, for the following reasons:

## I. INTRODUCTION

This case involves a provision of Proposition 227, the ballot initiative passed by California voters on June 2, 1998, titled "English Language in Public Schools." The initiative requires non-English speaking children in California public schools to be taught only in English. This suit challenges only the provision of the initiative which gives parents a private cause of action against teachers and school administrators who violate the law. The Plaintiffs

are individual teachers, teacher organizations, and school administrator organizations, who assert the provision is facially unconstitutional and seek to enjoin enforcement.[1]

The Defendants State Board of Education and its individual members are before the Court with a motion to dismiss the complaint, which is joined by the Interveners. The Plaintiffs have filed a motion for summary judgment on their claims. The Defendant Delaine Eastin, the State Superintendent of Schools, did not join the motion to dismiss, but resolution of the issues in these motions will likely resolve the issues with respect to her as well.

The parties agree on only one undisputed fact. They agree to the text of the Proposition 227, as passed by the voters. The parties also agree, however, that there are no other material issues of fact, and that these motions present only a question of law: Whether the personal liability section of the statute is unconstitutional under the due process clause of the Fourteenth Amendment.

## II. FACTUAL BACKGROUND

On June 2, 1998, California voters approved ballot Proposition 227, an initiative titled "English · Language in Public Schools." The statute amends the California Education Code to mandate a system under which students who are limited in English proficiency are educated in California's public schools. The initiative replaces bilingual education programs with immersion programs, in which students are required to learn English, and other subjects, by speaking with a teacher who speaks primarily in English. Cal.Educ. Code § 300.

The last sentence of the Section 320 of the proposition purports to hold teachers, administrators and school board members who "willfully and repeatedly" refuse to provide students an "English language educational option" personally liable for attorneys' fees and actual damages.[2] The Plaintiffs in this suit challenge only this enforcement provision of the proposition.

Proposition 227 was drafted to ensure that "all children in California public schools shall be taught English as rapidly and effectively as possible." Cal.Educ. Code § 300(f). In order to accomplish this goal, the proposition requires that children "shall be taught English by being taught in English." Cal.Educ.Code § 305. This involves guaranteeing public school children the right to be provided with an English language education by requiring

---

1. The Plaintiffs are the California Teachers Association, Association of Mexican American Educators, California Association for Asian–Pacific Bilingual Education, National Association for Bilingual Education, Association of California School Administrators, and teachers Irella Perez, Norma Steiner, Kristin Worthman, and Emily Palacio.

The Defendants in the suit are California State Board of Education and its members in their official capacities, and Delaine Eastin, the State Superintendent of Schools, in her official capacity. Governor Gray Davis was voluntarily dismissed from the suit.

Several parties have intervened on behalf of the Defendants: Ron Unz, the author of the initiative, parents Sarina Frias, Sylvia Martinez, Petra Ramirez, and Angelina Morfin, and the Center for Equal Opportunity.

2. The full text of section 320 reads as follows: As detailed in Article 2 (commencing with Section 305) and Article 3 (commencing with Section 310), all California school children have the right to be provided with an English language public education. If a California school child has been denied the option of an English language instructional curriculum in public school, the child's parent or legal guardian shall have legal standing to sue for enforcement of the provisions of this statute, and if successful shall be awarded normal and customary attorney's fees and actual damages, but not punitive or consequential damages. Any school board member or other elected official or public school teacher or administrator who willfully and repeatedly refuses to implement the terms of this statute by providing such an English language educational option at an available public school to a California school child may be held personally liable for fees and actual damages by the child's parents or legal guardian. Cal. Educ.Code § 320.

that all children be placed in "English language classrooms." Cal.Educ.Code § 305. "English language classroom" is defined as one in which the instruction given is "overwhelmingly" in English Cal. Educ.Code § 306(b).

The Proposition makes English immersion classes the standard option for children with limited proficiency in English and allows bilingual education to be available only with a parental waiver supported by informed consent. Cal.Educ.Code § 310. Unlike bilingual classrooms, where any mixture of languages is acceptable, English immersion classrooms require that "nearly all classroom instruction is in English." Cal.Educ.Code § 306(d).

The Plaintiffs in this lawsuit are teachers and administrators, and organizations that represent the members of these groups. The teachers named as Plaintiffs, Irella Perez, Norma Steiner, and Kristin Worthman, assert that they are unsure as to what behavior will subject them to liability under section 320 of the Proposition. They do not feel that the Proposition is specific enough to allow them to understand how much use of a foreign language other than English will be a violation of the terms of the Proposition. (Perez Decl. ¶ 3; Steiner Decl. ¶ 3; Worthman Decl. ¶ 3). Steiner is worried that her compliance with a English teaching method suggested by her school's administration could subject her to liability. (Steiner Decl. ¶ 3). She is also worried that Spanish used in disciplinary situations and in instructions regarding earthquake safety procedures could subject her to liability. (Id.) Perez asserts that she fears liability that could result from speaking to another teacher's students in situations involving discipline, playground supervision, and safety. (Perez Decl. ¶ 3). Worthman claims she has limited her discussion of bilingual options with parents, as a result of the fear that such discussions would be interpreted as advocating bilingual education. (Worthman Decl. ¶ 3).

Also parties to this suit are two interveners, which the Court granted intervention as of right under Federal Rule of Civil Procedure 24(a). First, the initiative's co-author, Ron Unz, was allowed to intervene based on his interest as a sponsor of the ballot initiative. Second, a group of parents with children in California schools and the Center for Equal Opportunity seek to intervene based on the asserted interest that they have children in the affected schools, and that their children have limited English proficiency.

## III. DISCUSSION

Because the record before the Court consists of declarations of the individual Plaintiffs, and thus goes beyond the pleadings, the Court will construe the Defendants' motion to dismiss as a motion for summary judgment. As previously noted, however, these motions present only a question of law.

### A. Jurisdiction and Justiciability

#### 1. Eleventh Amendment Sovereign Immunity

The Defendants contend that this suit is barred as against the State Board of Education by Eleventh Amendment sovereign immunity. The Defendants argue that the doctrine of Ex Parte Young does not apply because the State Board of Education is not the agency responsible for the enforcement of the provisions of the law being challenged.

The Eleventh Amendment grants states sovereign immunity against suit in federal court. U.S. Const. amend. XI. This immunity extends to suits against the state brought by citizens of that state. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984).

However, suits against state officials to enjoin them from continuing to enforce allegedly unconstitutional state laws are not barred, because these suits are not deemed to be suits against the state. Ex Parte Young, 209 U.S. 123, 166,

28 S.Ct. 441, 456, 52 L.Ed. 714 (1908). The *Ex Parte Young* doctrine applies only if the plaintiff seeks prospective injunctive relief, if the complaint alleges a violation of federal or constitutional law, and if the state official sued has "some connection with the enforcement of the act." *Id.* "Absent a real likelihood that the state official will employ his supervisory powers against plaintiffs' interests, the Eleventh Amendment bars federal court jurisdiction." *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir.1992).

The Defendants assert that the Eleventh Amendment bars this suit as against the State Board of Education and its members, because the suit is brought against a state entity and the *Ex Parte Young* exception to the Eleventh Amendment does not apply. The Defendants argue that because the personal liability provision will not be enforced by the Board or its members, but by parents, the Board cannot be the enforcement agency and it cannot be sued in federal court.

The Defendants rely on *Long v. Van de Kamp* for the proposition that there must be a connection between the official sued and the enforcement of the statute. In that case, the plaintiff sued the state Attorney General after being subjected to a warrantless search by county sheriff's deputies. The Ninth Circuit held that the Attorney General would probably never use any supervisory power to curtail this type of search, and that the rationale of *Ex Parte Young* did not apply. *Long*, 961 F.2d at 152. The Defendants assert the same is true here: Even if the State Board has some enforcement power with regards to the proposition, they are not the party which will enforce the law through parent-initiated suits permitted by section 320.

■ The Plaintiffs counter with the argument that the State Board is the body charged with enforcement of the law, and that they have issued regulations providing additional definitions and requirements. Even though the section challenged in this lawsuit provides for liability in suits brought by parents, the broad enforcement of the statute is the responsibility of the State Board of Education. In November of 1998, the Board issued regulations which defined various terms in the proposition, and outlined a schedule for implementation of the law. *See,* Plaintiffs' Opposition to Motion to Dismiss, Ex. B. These regulations indicate direct enforcement power, and indicate the Board indirectly effects the personal liability of any teacher or administrator under section 320. For this reason the State Board is the proper entity to name in the suit, and the doctrine of *Ex Parte Young* applies as an exception to the Eleventh Amendment.

Because the Plaintiffs are suing only for prospective injunctive relief, and because the State Board of Education is the state governmental body responsible for the enforcement and administration of Proposition 227, the suit is not barred by the Eleventh Amendment.

### 2. Case or Controversy

Defendants contend that a case or controversy does not exist because there is no threat of enforcement of the statute by the State Board, since the Plaintiffs challenge only the section providing for parent-initiated suits against teachers and administrators.

■ The Constitution limits the federal judicial power to cases and controversies. U.S. Const. art. III, § 2. Federal courts may only determine such matters as arise in the context of a genuine case or controversy within the meaning of Article III. *SEC v. Medical Committee for Human Rights,* 404 U.S. 403, 407, 92 S.Ct. 577, 580, 30 L.Ed.2d 560 (1972). Furthermore, a lack of threatened enforcement by the sued state official means that the "case or controversy" requirement of the Article III is not satisfied. *See Long v. Van de Kamp,* 961 F.2d 151, 152 (9th Cir.1992).

■ However, "[a] Plaintiff whose constitutional rights have not been violated may nevertheless bring a facial challenge to a law that implicates the First Amend-

ment. The exception [to the case or controversy rule] applies when a law has a 'close enough nexus to expression' to threaten or chill free speech." *Tennison v. Paulus,* 144 F.3d 1285, 1287 (9th Cir. 1998).

The Defendants contend that there is no Article III case or controversy between the Plaintiffs and the Board of Education, for many of the same reasons cited in their Eleventh Amendment argument: The Board is not responsible for the enforcement of the provision holding teachers personally liable. However, as noted previously, the Board is the body charged with implementing and enforcing the statute in the form of regulations and policies which are binding on the state's public schools. The Board has promulgated regulations defining the .terms in the statute and giving instruction to teachers and administrators.

■ This is a facial challenge to the statute, alleging that it may chill free speech because it is overbroad and vague. The injury alleged is the chilling of protected speech, which is allegedly now occurring and is ongoing. *Tennison v. Paulus,* 144 F.3d 1285, 1287 (9th Cir.1998). Assuming arguendo that the Plaintiffs contentions are true, the chilling of speech will occur because of the threat of private suit in conjunction with the implementation and regulation by the Board of Education. There is a case or controversy between these parties, and thus there is Article III standing to sue the State Board of Education and its members.

■ There is standing to bring this suit against the State Board even if the Court later determines that the First Amendment rights are not implicated by the statute. The question of standing should be resolved before the merits of the claim. The allegations of a facial due process challenge, in which First Amendment rights are allegedly implicated, is enough to confer standing to sue the State Board of Education.

## B. *Pullman* Abstention

■ The parties do not raise the issue of abstention, but we address the issue because it should be raised *sua sponte* if appropriate. When a federal court is called upon to interpret a state law, under some circumstances the court should abstain from determining the law's constitutionality until the state's highest court has interpreted the meaning of the law.[3]

■ When a state statute is challenged as violating the United States Constitution, a federal court may abstain from deciding the case until the state courts have reviewed any questions of state law which might moot or reshape the constitutional questions. *See Railroad Commission of Tex. v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The policy behind the use of the *Pullman* abstention is to avoid unnecessary adjudication of federal questions and to allow state courts to have the first chance to evaluate and explain state statutes. *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984); *C–Y Dev. Co. v. City of Redlands,* 703 F.2d 375, 380 (9th Cir.1983).

■ Abstention is the exception and not the rule, and is particularly inappropriate in cases involving facial challenges based on the First Amendment. *City of Houston, Tex. v. Hill,* 482 U.S. 451, 467, 107 S.Ct. 2502, 2512–13, 96 L.Ed.2d 398 (1987).

In determining whether the *Pullman* abstention doctrine should be invoked, the Court should analyze three factors:

(1) Whether the complaint "touches a sensitive area of social policy upon which the federal courts ought not to enter

---

3. This Court cannot certify the question to the California Supreme Court, because only federal appellate courts can certify a question to that court. California Rules of Court, Rule

29.5. Therefore the state courts would get the chance to interpret the law before this Court takes on that task only through the use of the *Pullman* abstention doctrine.

unless no alternative to its adjudication is open."

(2) Whether "such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy."

(3) Whether the possibly determinative issue of state law is doubtful.

*See Canton v. Spokane Sch. Dist. No. 81,* 498 F.2d 840, 845 (9th Cir.1974) (quoting *Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)).

The Court has discretion to use the *Pullman* abstention if "resolution of state law issues might mean that 'the constitutional issue does not arise.'" *See Privitera v. California Bd. of Med. Quality Assur.,* 926 F.2d 890, 895 (9th Cir.1991) (citing *Pullman,* 312 U.S. 496, 61 S.Ct. 643). However, "there is little or no discretion to abstain in a case which does not meet traditional abstention requirements." *C–Y Dev. Co.,* 703 F.2d at 377. Abstention is not warranted if the state law is clear on its face. *See Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984); *see also* 17A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4242 (2d ed.1988). The Court has the power to raise the *Pullman* abstention issue on its own, even if neither party has requested it. *Bellotti v. Baird,* 428 U.S. 132, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976).

■ However, *Pullman* abstention is not appropriate in this case. First, this is a case involving a facial challenge to a law on First Amendment grounds. This abstention doctrine is especially disfavored in these cases, because of the importance of free speech rights and the delay that would result from abstention.

Second, it is not clear that a narrower construction is possible by the state court that would preclude the constitutional issues. The law outlines a curriculum in which students are taught in English. In determining whether to abstain, the Court should consider whether there is an issue within the statute that a state court might

construe to "obviate, or at least delimit, decision of the [constitutional] question." *See Canton v. Spokane Sch. Dist. No. 81,* 498 F.2d 840, 845 (9th Cir.1974). Here it is unlikely that any state court construction will further clarify the law, or that any construction would obviate the constitutional question.

The fact that there is a chance the state courts might make federal analysis of a constitutional question unnecessary is not enough. There must be some uncertainty as to the interpretation of the law that could be subject to a limiting construction by the state court before abstention is permitted. *See Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984). Here the Plaintiffs complain of the vagueness of phrases such as "overwhelmingly the English language" and "English language educational option." These phrases are sufficiently clear, as defined in the other parts of the statute and as defined by the context, and it is unlikely that the state courts will narrow or clarify these terms. Abstention in this case would have to rely on a speculative belief that the state court would drastically alter the meaning of the statute. However, as discussed below, the Court finds that the statute is sufficiently clear and survives a constitutional vagueness challenge. Because the Court considers the statute clear, a state court "clarification" or interpretation would not be necessary to avoid the constitutional issues.

## C. Whether the Proposition Implicates First Amendment Rights

The Plaintiffs' main contention in this suit is that Proposition 227 implicates protected speech, thus requiring it to comply with more stringent vagueness and due process standards. If the statute does implicate protected speech under the First Amendment, then the statute's language must be sufficiently clear so that it will not chill protected speech.

Intervener Frias contends that the public forum doctrine applies, so that the

Plaintiff teachers have only limited First Amendment rights. Intervener Unz contends that the statute does not regulate the teachers' speech, but the speech of the state, and thus does not implicate the First Amendment.

██ ] Numerous courts have considered the question of whether teachers enjoy a First Amendment right to free speech in the context of their jobs as educators. In order to determine if a teacher's speech is constitutionally protected expression, a court must balance "the interest of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *See Nicholson v. Board of Educ. Torrance Unified Sch. Dist.,* 682 F.2d 858, 865 (9th Cir.1982) (citing *Pickering v. Board of Ed. Of Township High Sch. Dist, 205,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968)).

██ Since a classroom is not a public forum, "school officials may impose reasonable restrictions on the speech of students, teachers, and other members of the school community." *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 108 S.Ct. 562, 568, 98 L.Ed.2d 592 (1988) (holding the administration may impose restrictions upon "student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns.")

██ Teachers do not have a First Amendment right to determine what curriculum will be taught in the classroom. *See Edwards v. California Univ. of Pennsylvania,* 156 F.3d 488, 491 (3rd Cir.1998); *Kirkland v. Northside Independent Sch. Dist.,* 890 F.2d 794, 795 (5th Cir.1989). This is especially true if the teacher's curriculum of choice is in contravention of specific school policies or dictates. *See Bradley v. Pittsburgh Bd. of Educ.,* 910 F.2d 1172, 1176 (3rd Cir.1990).

The Fourth Circuit has held that teacher's speech rights can be restricted after "requiring school authorities to provide a legitimate pedagogical basis for [the] in-class speech restriction." *Boring v. Buncombe County Bd. of Educ.,* 98 F.3d 1474, 1482 (4th Cir.1996) (citing *Hazelwood,* 108 S.Ct. at 571). Teachers and professors do not have a First Amendment right to choose their own curriculum materials, if it goes against a university's requirements. *Edwards v. California University of Pennsylvania,* 156 F.3d 488, 491–492 (3rd Cir.1998).

"When the University determines the content of the education it provides, it is the University speaking, and we have permitted the government to regulate the content of what is or is not expressed when it is the speaker or when it enlists private entities to convey its own message." *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 115 S.Ct. 2510, 2519, 132 L.Ed.2d 700 (1995).

The Plaintiffs' complaint makes a facial challenge to the private enforcement provision, because no teacher has been subjected to liability for allegedly violating the law. The complaint asserts that the law is overbroad, and vague, and thus violates the First and Fourteenth Amendments. The Plaintiffs' briefs filed in connection with these motions, however, focus almost exclusively on the vagueness challenge, in effect conceding that they cannot prevail on a facial overbreadth challenge.

██ The Proposition states that "all children in California public schools shall be taught English by being taught in English." Cal.Educ.Code § 305. The statute goes on to say that this requires all children be placed in "English language classrooms." *Id.* In the definitions section of the Proposition, "English language classrooms" is defined at a "classroom in which the language of instruction ... is overwhelmingly the English language." *Id.* § 306. The statute also contains an enforcement provision, under which parents and legal guardians have standing to sue. *Id.* § 320. The aggrieved parent can recover actual damages and fees from any teacher or administrator who "willfully and

repeatedly refuses to implement the terms of this statute by providing an English language educational option." *Id.*

By the plain language of the statute, the requirements of the statute are limited to "teaching" and "instruction." The Proposition does not completely prohibit languages other than English. The Proposition does not mention or refer to any prohibition of languages other than English used in disciplining students, emergency training, social interactions, tutoring, parent-teacher conferences, or any of the other situations listed by the Plaintiffs.

While there may be some First Amendment rights which attach to teachers' activities outside the realm of instruction or curriculum, the Proposition does not prohibit non-English in these situations. The Proposition involves a policy decision on curriculum, in which teachers are required to hold lessons for English learners in English, rather than in the native language. The Court concludes, as have many other courts, that teachers do not have a First Amendment right to be free of regulations which tell them to follow a method of instruction or a curriculum. Courts have held that the state can regulate in-class speech as long as it relates to legitimate educational goals. *See, e.g., Bishop v. Aronov,* 926 F.2d 1066, 1074 (11th Cir.1991).

The Plaintiffs seem to concede the point that the state can regulate teachers' speech inside the classroom, since they did not bring a claim that the law directly violates the First Amendment. Instead they bring a vagueness challenge, asserting only that the alleged vagueness could implicate some free speech concerns. The Plaintiffs are correct when they assert that the choice of language is pure speech which would be entitled to First Amendment protections. *Yniguez v. Arizonans for Official English,* 69 F.3d 920, 935 (9th Cir.1995), *vacated on other grounds,* 520 U.S. 43, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). However, like other regulations of speech in the areas of instruction and educational policy, the state can dictate to teachers that they teach in English. The language of the proposition does not affect any speech protected by the First Amendment.

## D. Vagueness

The Plaintiffs contend the statute is vague because it fails to provide adequate notice to teachers as to what conduct is prohibited and what conduct will potentially expose them to liability. The Plaintiffs argue that even a small amount of vagueness in the law is fatal, because of the First Amendment implications. In making this argument, the Plaintiffs focus on whether speech outside the classroom or instructional settings is prohibited by the Proposition.

The Defendants and Interveners contend that the statute cannot be unconstitutional on the grounds of vagueness because it is sufficiently clear and because it contains an intent element: To be liable teachers must "willfully and repeatedly" violate the provisions of the law.

■■■ "A court must construe a statute to uphold its validity if possible." *Robertson v. Seattle Audubon Soc'y,* 503 U.S. 429, 441, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992). To hold a statute facially invalid, there needs to be more than conceivable unconstitutional applications. The statute must not be able to be applied in any valid manner. *See Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984). Facial invalidation "has been employed by the Court sparingly and only as a last resort." *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973).

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). "In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the en-

actment reaches a substantial amount of constitutionally protected conduct." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* 455 U.S. 489, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). If it reaches a substantial amount, it can be found overly broad. *See Stoianoff v. State of Mont.,* 695 F.2d 1214, 1218 (9th Cir. 1983). There is a policy against applying the overbreadth doctrine in facial review unless the First Amendment is implicated. *See Stoianoff,* 695 F.2d at 1218 (citing *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). If a statute implicates no constitutionally protected conduct, it should be upheld unless it is impermissibly vague in all of its applications. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). The degree of vagueness that is allowable depends partly upon the nature of the challenged statute, and greater tolerance is given to statutes with "civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 1193.

However, if a law interferes with free speech rights, a more stringent vagueness test should apply. *See Hoffman,* 102 S.Ct. at 1193–94 (1981). If the statute impermissibly regulates protected speech, then the strict scrutiny test applies, if the speech is not constitutionally protected then it is reviewed only to see if it is rationally related to a legitimate state interest. *See Melugin v. Hames,* 38 F.3d 1478, 1483–84 (9th Cir.1994). "The need for definiteness is greater when the ordinance ... implicates constitutionally protected rights than when it regulates the economic behavior of businesses." *Nunez v. City of San Diego,* 114 F.3d 935, 940 (9th Cir.1997).

 The government must use narrow specificity to regulate in the First Amendment context in order to avoid problems with vagueness; the standards of permissible statutory vagueness are strict. *See National Ass'n for Advancement of Colored People v. Button,* 371 U.S. 415, 83

S.Ct. 328, 337–38, 9 L.Ed.2d 405 (1963). Where a statute implicating basic First Amendment freedoms is vague, it creates a chilling effect on the exercise of those freedoms, leading citizens to "steer far wider of the unlawful zone ... than if the boundaries of the forbidden areas were clearly marked." *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

"A statute is void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes or if it incites arbitrary and discriminatory enforcement." *See Schwartzmiller v. Gardner,* 752 F.2d 1341, 1345 (9th Cir.1984) (internal citations omitted). One key to analyzing whether a statute is unconstitutionally vague is to "determine the breadth of the ordinance's basic proscription in light of the enumerated exceptions." *Nunez v. City of San Diego,* 114 F.3d 935, 940 (9th Cir.1997). Statutes which burden free speech rights "must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973). To determine that a statute would have a chilling effect on the exercise of First Amendment rights, the fact that the statute might reach First Amendment activities is not sufficient; the statute must reach a substantial amount of constitutionally protected activity. *See U.S. v. Dischner,* 960 F.2d 870, 879 n. 7 (9th Cir. 1992).

 The Plaintiffs allege the law is vague as to whether the law reaches protected speech outside the classroom. If the law is vague in the way asserted by the Plaintiffs, then it would implicate First Amendment rights. Teachers do have a right to speak outside the classroom. If teachers believe that they cannot speak in a student's native language on the playground, in social situations, or in emergencies, then their First Amendment rights

would be implicated. However, the Plaintiffs must do more than merely assert that any vagueness would chill protected speech. The language of the statute must actually be vague, and this vagueness must make it unclear as to whether protected speech is prohibited or not.

The vagueness doctrine serves three main purposes: (1) to avoid punishing people for behavior they could not have known was illegal, (2) to avoid subjective enforcement of laws by governmental officers, judges and juries, and (3) to avoid any chilling effect on the exercise of First Amendment freedoms. *Id.* When First Amendment freedoms are at stake, a greater degree of specificity and clarity is required. *National Ass'n for Advancement of Colored People v. Button,* 371 U.S. 415, 432–33, 83 S.Ct. 328, 337–38, 9 L.Ed.2d 405 (1963).

The provisions of the Proposition are sufficiently clear. Because the provisions involve only classroom instruction, and teachers do not have significant First Amendment rights inside the classroom, the Proposition need not meet the more stringent standard that would apply if it implicated First Amendment freedoms. The provisions give teachers and administrators adequate notice, and would avoid subjective or arbitrary enforcement. The Plaintiffs contend that the phrase in section 320, "English language educational option" is not defined in the proposition and is thus ambiguous. The Plaintiffs assert this phrase could refer to conduct outside the classroom. However, "English language educational option" is used interchangeably with the phrases "English language public education" and "English language instructional curriculum," each of which relate to the phrase that is defined by the statute, "English language classroom." These phrases all refer to a classroom curriculum "where the language of instruction used by the teaching personnel is overwhelmingly the English language." Cal.Educ.Code § 306. The Plaintiffs also claim that the term "overwhelmingly" is ambiguous and makes the statute vague if used to subject teachers to liability. How-

ever, this word does provide sufficient guidance to teachers and administrators: It is clear that only a very small amount of speech in the student's native language is permitted.

The section challenged by the Plaintiffs only subjects teachers and administrators to liability if they "willfully and repeatedly" violate the requirements of the law. This requires a finding of intent before imposing liability. This weighs in favor of finding the law sufficiently definite, since anyone found liable will have known that they were violating the law. *Village of Hoffman Estates,* 455 U.S. at 499, 102 S.Ct. 1186. In addition, laws which impose civil liability, rather than criminal sanctions, must meet a lower standard for vagueness under the due process clause. *Id.*

The Plaintiffs complain that the vagueness chills speech that may be protected by the First Amendment, namely speech outside the classroom. However, even under the more stringent test, the law is sufficiently clear to survive a constitutional challenge based on vagueness. The statute is most clear exactly where the Plaintiffs assert that its vagueness could chill free speech. The statute on its face only pertains to classroom instruction, and requires only that English be the "language of instruction." Even if the statute is less clear about the exact amount of English to be used inside the classroom, it cannot be said to chill speech outside the classroom. For those reasons and the reasons previously stated, the statute survives a more stringent vagueness analysis.

## E. Due Process Challenge Based on Lack of Procedural Safeguards

The Plaintiffs also raise other due process challenges to the law. The Plaintiffs contend that the statute violates due process because (1) it does not specify an intent to override the common law immunity for "educational malpractice;" (2) it is silent on the standard for measuring damages; and (3) it lacks procedural safe-

guards against arbitrary and bad-faith lawsuits.

No State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The fundamental requirement of due process of law is the opportunity to be heard. *See Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970).

A statute may override the common law if it does so in clear and unambiguous terms. *See California Ass'n of Health Facilities v. Dept. Of Health Serv.,* 16 Cal.4th 284, 65 Cal.Rptr.2d 872, 880, 940 P.2d 323 (1997). Under previous California common law, school authorities did not owe students any duty of care in the process of their academic education. *See Peter W. v. San Francisco Unified Sch. Dist.,* 60 Cal.App.3d 814, 131 Cal.Rptr. 854, 855 (1976).

■ The Plaintiffs claim that the statute violates due process because it does not use clear and unambiguous terms to effect a significant departure from the California's common law rule which does not allow a tort for "educational malpractice." However, it is California law which requires a clear and unambiguous statement when a statute alters common law, and therefore this question is one of state law, not a question of constitutional due process. *California Ass'n of Health Facilities,* 16 Cal.4th 284, 65 Cal.Rptr.2d 872, 940 P.2d 323 (1997). Moreover, the statute does clearly state that teachers are now open to personal liability for failure to implement the terms of the statute. This alteration of California's common law by statute does not rise to the level of a due process violation. Instead, the question of how far the Proposition goes in abrogating the common law is a question of statutory interpretation, which is a matter of state law not properly before the Court.

■ The Plaintiffs next claim that the statute violates due process because it does not provide a standard for assessing damages. The statute allows teachers to be "held personally liable for fees and actual damages." Cal.Educ.Code § 320. The statute does not allow for punitive damages. The Plaintiffs claim there is no definition for what actual damages entail. However, the right to a trial includes the right to have these "actual damages" supported by proof at trial. The due process clause requires that these damages not be awarded arbitrarily, but does not require that the statute authorizing them spell out in detail what can constitute "actual damages." The Plaintiffs cite to *Honda Motor Co. v. Oberg,* 512 U.S. 415, 114 S.Ct. 2331, 2335, 129 L.Ed.2d 336 (1994) in support of their proposition that the due process clause prohibits damages which are assessed in an arbitrary manner. However, *Honda* concerned excessive punitive damages, not actual damages. 114 S.Ct. at 2335.

■ The Plaintiffs also claim that the statute violates due process because it lacks procedural safeguards against arbitrary and bad-faith lawsuits. However, they cite no support for the proposition that such safeguards need to exist. The statute leaves teachers in the same position as that of all other potential litigants, who are free to defend themselves against non-meritorious suits. Due process is not violated by failing to give teachers and administrators special safeguards in this situation.

## IV. CONCLUSION

The Court concludes the Plaintiffs have not shown that the private enforcement provision of Proposition 227 is facially unconstitutional. For the reasons stated above, the Court DENIES Plaintiffs' motions for summary judgment and GRANTS the Defendant State Board of Education's motion to dismiss, construed as a motion for summary judgment.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve, by United States mail or by telefax, copies of this

Order on counsel for the parties in this matter.