FILED
14-0175
2/20/2015 1:38:11 PM
tex-4230467
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK



## No. 14-0175

## IN THE SUPREME COURT OF TEXAS

IN RE LONGVIEW ENERGY COMPANY, RELATOR

## BRIEF OF AMICI CURIAE
### CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, AMERICAN TORT REFORM ASSOCIATION, AND NFIB SMALL BUSINESS LEGAL CENTER IN SUPPORT OF DEFENDANTS WITH RESPECT TO INTERPRETATION OF BOND CAP

Elmore James Shepherd III
SBN 24008025
eshepherd@shb.com
SHOOK, HARDY & BACON L.L.P.
JP Morgan Chase Tower
600 Travis Street, Suite 3400
Houston, TX 77002
(713) 227-8008
(713) 227-9508 (fax)

*Counsel for Amici Curiae*

FILED
IN THE COURT OF APPEALS
AT SAN ANTONIO, TEXAS
2015 FEB 23 AM 11:49
KEITH E. HOTTLE, CLERK

FILED
14-0175
2/20/2015 1:38:11 PM
tex-4230467
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

No. 14-0175

---

## IN THE SUPREME COURT OF TEXAS

---

IN RE LONGVIEW ENERGY COMPANY, RELATOR

---

### BRIEF OF AMICI CURIAE
CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA,
AMERICAN TORT REFORM ASSOCIATION, AND
NFIB SMALL BUSINESS LEGAL CENTER
IN SUPPORT OF DEFENDANTS
WITH RESPECT TO INTERPRETATION OF BOND CAP

---

Elmore James Shepherd III
SBN 24008025
eshepherd@shb.com
SHOOK, HARDY & BACON L.L.P.
JP Morgan Chase Tower
600 Travis Street, Suite 3400
Houston, TX 77002
(713) 227-8008
(713) 227-9508 (fax)

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... ii

STATEMENT OF THE CASE........................................................................... vi

ISSUE PRESENTED......................................................................................... vi

INTEREST OF *AMICI CURIAE* ........................................................................ 1

SUMMARY OF ARGUMENT .......................................................................... 3

ARGUMENT...................................................................................................... 4

    I.     APPEAL BOND LIMITS ARE INCREASINGLY
           NECESSARY TO SAFEGUARD DUE PROCESS GIVEN
           THE RISE OF EXTRAORDINARY VERDICTS ................................. 4

    II.    TEXAS LED THE STATES IN ADOPTING APPEAL BOND
           REFORMS IN RESPONSE TO INSTANCES OF MANIFEST
           INJUSTICE DUE TO EXCESSIVE BONDS ..................................... 7

           A.    The *Texaco v. Pennzoil* Case Exemplifies the Impossible
                    Choices Faced by Texas Defendants with Blockbuster
                    Judgments Before the 2003 Appeal Bond Reforms ................... 7

           B.    As Instances of Injustice Mounted, Texas Had the Foresight
                    to Enact a Generally Applicable Appeal Bond Limit ................. 9

           C.    The Vast Majority of States Now Protect a
                    Defendant's Ability to Appeal ............................................... 13

    III.   THE STATUTE SHOULD BE READ TO PROMOTE THE
           AVAILABILITY OF MEANINGFUL APPELLATE REVIEW....... 15

PRAYER............................................................................................................ 16

CERTIFICATE OF COMPLIANCE............................................................... 17

CERTIFICATE OF SERVICE ........................................................................ 18

# TABLE OF AUTHORITIES

**CASES**                                                                   **PAGE**

*Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006) .................................... 10

*Evitts v. Lucey*, 469 U.S. 387 (1985) ........................................................................ 4

*Honda v. Oberg*, 512 U.S. 415 (1994) ....................................................................... 4

*In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168 (Tex. 2013) ............... 7, 12

*N. Ind. Pub. Serv. Co. v. Carbon County Coal Co.*,
    799 F.2d 265 (7th Cir. 1986) ............................................................................ 6

*O'Keefe v. The Lowen Group*, No. 91-67-423
    (Circ. Ct., Hinds Co., Miss. 1995) ................................................................. 11

*Philip Morris, Inc. v. Ill. App. Ct., Fifth Dist.*, No. 96644,
    2003 Ill. LEXIS 2625 (Ill. Sept. 16, 2003) .................................................... 10

*Price v. Philip Morris Inc.*, 793 N.E.2d 942 (Ill. App. Ct. 2003) ......................... 10

*Texaco, Inc. v. Pennzoil Co.*, 626 F. Supp. 250 (S.D.N.Y. 1986),
    *aff'd*, 784 F.2d 1133 (2d Cir 1986), *rev'd sub nom.*,
    *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987) ........................................ 7-8

*Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768 (Tex. App. 1987) .......................... 8

**STATUTES, LEGISLATION, AND COURT RULES**

Ala. Code § 6-12-4 ................................................................................................... 5

Ark. Code § 16-55-214 ........................................................................................... 13

Ariz. Rev. Stat. § 12-2108 ..................................................................................... 13

Colo. Rev. Stat. § 13-16-125 ............................................................................ 13, 14

Conn. R. App. P. § 61-11 ....................................................................................... 13

Fed. R. Civ. P. 62 ..................................................................................................... 6

Fla. Stat. Ann. § 768.733 ...................................................................9

Ga. Code Ann. § 5-6-46 ..............................................................13, 14

Haw. Rev. Stat. Ann. § 607-26 .......................................................13

Ill. Sup. Ct. R. 305 .........................................................................10

Ind. Code Ann. § 34-49-5-3 ...........................................................13

Ky. Rev. Stat. § 411.187 .................................................................14

Me. R. Civ. P. 62 ............................................................................13

Mass. R. Civ. P. 62 .........................................................................13

Mich. Comp. Laws § 600.2607 .......................................................13

Miss. R. App. R. 8 ...........................................................................11

Mo. Rev. Stat. § 512.099 ................................................................14

Mont. Code Ann. § 25-12-103 ........................................................14

Nev. Rev. Stat. § 20.035.1 ..............................................................11

N.C. Gen. Stat. § 1-289 .............................................................13, 14

N.D. Cent. Code § 28-21-25 ...........................................................13

N.H. Rev. State. Ann. § 527:1 ........................................................13

Okla. Stat. Ann. tit. 12 § 990.4 ..................................................13, 14

P.R. R. Civ. P. 53.9 .........................................................................13

S.C. Code Ann. § 18-9-130 .......................................................13, 14

S.D. Sup. Ct. R. 03-13....................................................................13

Tenn. Code Ann. § 27-1-124 .....................................................13, 14

Tex. Civ. Prac. & Rem. Code § 52.006 .......................................passim

Tex. R. App. P. 9.4.................................................................................17

Tex. R. App. P. 11...................................................................................1

Tex. R. App. P. 24.2...............................................................................7

Va. Code Ann. § 8.01-676.1 ................................................................13

Vt. R. Civ. P. 62...................................................................................13

W. Va. Code § 4-11A-4 .......................................................................11

W. Va. Code § 58-5-14 ........................................................................14

Wyo. Stat. § 1-17-201 .........................................................................13

H.B. 4, 78th Leg., R.S. (2003) ............................................................11

## OTHER AUTHORITIES

Michael Arndt, *Texaco Files For Bankruptcy: Oil Giant Buys Time in $12 Billion Fight*, Chic. Trib., Apr. 13, 1987.................................8

Nina Bernstein, *Funeral Chain Settles, Avoiding a Big Bill*, N.Y. Times, Jan. 30, 1996, at D5 ................................................11

Elaine Carlson, *Mandatory Supersedeas Bond Requirements - A Denial of Due Process Rights?*, 39 Baylor L. Rev. 29 (1987)...................7

Elaine A. Carlson, *Reshuffling the Deck: Enforcing and Superseding Civil Judgments on Appeal after House Bill 4*, 46 S. Tex. L. Rev. 1035 (2005) ..............................................12

Richard L. Cupp, *State Medical Reimbursement Lawsuits After Tobacco: Is the Domino Effect For Lead Paint Manufacturers And Others Fair Game?*, 27 Pepp. L. Rev. 685 (2000).......................................9

Editorial, *Too Costly an Appeal*, N.Y. Times, Apr. 4, 2003, at A20.................10

Jef Feeley, *Takeda, Lilly Win 99.6% Cut in Actos Punitive Damages*,
Bloomberg, Oct. 28, 2014, *at* http://www.bloomberg.com/news/
articles/2014-10-27/takeda-lilly-get-9-billion-actos-award-cut-99-
percent..................................................................................................6

Hiroyuki Kachi, *Takeda, Lilly Ordered to Pay $9 Billion in Diabetes-
Drug Case*, Wall St. J., Apr. 8, 2014.................................................6

Top 100 Verdicts of 2013, Nat'l L.J., Mar. 24, 2014,
*at* http://www.nationallawjournal.com/id=1202647966490/
Top-100-Verdicts-of-2013...............................................................5

Joseph Nixon, Ten Years of Tort Reform in Texas: A Review
(Heritage Found. & Tex. Pub. Pol'y Found. 2013),
*at* http://thf_media.s3.amazonaws.com/2013/pdf/bg2830.pdf.............11

The Perryman Group, A Texas Turnaround: The Impact of Lawsuit
Reform on Business Activity in the Lone Star State (2008), *at* http://
tlrfoundation.com/beta/files/Texas_Tort_Reform_Report_2008.pdf...... 11-12

Doug Rendleman, *A Cap on the Defendent's Appeal Bond?: Punitive
Damages Tort Reform*, 39 Akron L. Rev. 1089 (2006). ...........................8, 11

Joel Rosenblatt & Laurence Viele Davidson, *Exxon Wins $3.5 Billion
Appeal in Alabama Fees Case*, Bloomberg, Nov. 1, 2007,
*at* http://www.bloomberg.com/apps/news?pid=newsarchive&sid=
afqiYjedTs_o&refer=news ...............................................................5

Victor E. Schwartz, Mark A. Behrens & Leah Lorber, *Tort Reform Past,
Present And Future: Solving Old Problems And Dealing With
"New Style" Litigation*, 27 Wm. Mitchell L. Rev. 237 (2000)....................4

Sindhu Sundar, *Top Product Verdicts of 2014—And the Firms That Won
Them*, Feb. 9, 2015, at http://www.law360.com/articles/619796/
top-product-verdicts-of-2014-and-the-firms-that-won-them ....................6

## STATEMENT OF THE CASE

*Amici* adopt the Statement of the Case of Defendants, The Huff Energy Fund, L.P., WRH Energy Partners, L.L.C., William R. "Bill" Huff, Rick D'Angelo, Riley-Huff Energy Group, LLC, to the extent it relates to the issues addressed in this *amicus* brief.

## ISSUE PRESENTED

*Amici* limit their brief to the issue of whether the Court of Appeals correctly concluded that Texas law limits the amount of security a defendant must post to stay enforcement of a judgment during appeal to $25 million *per judgment* and does not authorize quadrupling the amount of security required when there are four judgment debtors.

## INTEREST OF *AMICI CURIAE*

*Amici* are non-profit trade associations whose members operate in Texas and throughout the United States.[1] *Amici* have an interest in ensuring that Texas law adequately safeguards the right of businesses to appeal extraordinary judgments. *Amici* agree with Defendants' reading of Tex. Civ. Prac. & Rem. Code § 52.006, adopted by the Court of Appeals, that the maximum appeal bond permitted is $25 million per judgment, regardless of the number of defendants. *Amici* do not restate these statutory construction arguments, but write to provide the Court with the public policy underlying appeal bonds and why interpreting Texas law in a manner favoring the right to appeal is even more critical today than ever before. *Amici* take no position on the merits of the underlying litigation.

The Chamber of Commerce of the United States of America ("U.S. Chamber") is the world's largest federation of businesses and associations. The Chamber represents 300,000 direct members and indirectly represents the interests of more than three million U.S. businesses and professional organizations of every size and in every economic sector and geographic region of the country, including Texas. An important function of the Chamber is to represent the interests of its members in important matters before the courts, legislatures, and

---

[1]    No counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation of submission of this brief. No person other than *amici*, their members, or their counsel made a monetary contribution to its preparation or submission. Tex. R. App. P. 11.

executive agencies. To that end, the Chamber regularly files *amicus curiae* briefs in cases, such as this one, that raise issues of concern to the business community.

Founded in 1986, the American Tort Reform Association ("ATRA") is a broad-based coalition of businesses, corporations, municipalities, associations, and professional firms that have pooled their resources to promote reform of the civil justice system with the goal of ensuring fairness, balance, and predictability in civil litigation. For over two decades, ATRA has filed amicus curiae briefs in cases before state and federal courts that have addressed important liability issues.

The NFIB Small Business Legal Center, a nonprofit, public interest law firm established to protect the rights of America's small-business owners, is the legal arm of the National Federation of Independent Business ("NFIB"). NFIB is the nation's oldest and largest organization dedicated to representing the interests of small-business owners throughout all fifty states. The approximately 350,000 members of NFIB own a wide variety of America's independent businesses from manufacturing firms to hardware stores.

## SUMMARY OF ARGUMENT

Texas's limit on appeal bonds should be interpreted in a manner that promotes its purpose: to safeguard the ability of a defendant to appeal an extraordinary adverse judgment. In furtherance of this goal, in 2003, the Legislature limited the security necessary to stay enforcement of a judgment during an appeal to the lesser of $25 million or 50% of the judgment debtor's net worth. *See* Tex. Civ. Prac. & Rem. Code § 52.006. Interpreting this limit to apply per judgment advances the public policy underlying the statutory limit, as the Court of Appeals recognized. The alternative, interpreting the cap to apply per judgment debtor, would adversely impair the ability of businesses facing adverse judgments – particularly in high-stakes "bet-the-business" litigation – to seek appellate review. In multi-defendant suits, as here, the required security to appeal a single case could reach or exceed $100 million. Such a result is not only contrary to the statutory text, as Defendants show, but the objective of such laws. *Amici* respectfully urge this Court to affirm the Court of Appeals' per judgment interpretation of Tex. Civ. Prac. & Rem. Code § 52.006.

3

## ARGUMENT

### I. APPEAL BOND LIMITS ARE INCREASINGLY NECESSARY TO SAFEGUARD DUE PROCESS GIVEN THE RISE OF EXTRAORDINARY VERDICTS

Appeal bond limits safeguard due process rights by facilitating meaningful access to a state's appellate court system to challenge an adverse judgment. *See Honda v. Oberg*, 512 U.S. 415, 432 (1994) (holding that states must adopt sufficient procedural safeguards to guard against arbitrary deprivation of property resulting from punitive damage awards); *Evitts v. Lucey*, 469 U.S. 387, 393-94 (1985) (recognizing that the procedures used to decide appeals must make the right to appeal "meaningful" and "more than a meaningless ritual").

The importance of limiting the security required to appeal an adverse judgment has significantly increased with the rise of class actions and mass torts, the emergence of government-sponsored lawsuits that target corporate defendants through use of contingency-fee counsel, and the creation of novel and expansive theories of liability. *See* Victor E. Schwartz, Mark A. Behrens & Leah Lorber, *Tort Reform Past, Present and Future: Solving Old Problems and Dealing With "New Style" Litigation*, 27 Wm. Mitchell L. Rev. 237, 261 (2000). These now-entrenched litigation tactics increase the odds of astronomical judgments in civil cases.

4

Many areas of litigation are increasingly producing eye-popping verdicts of the type that could present bonding problems for some defendants. For example, Exxon Mobil Corp. faced an $11.9 billion judgment for allegedly underpaying natural gas royalties from wells in Gulf Coast waters. The punitive damage award, which had already been reduced to $3.6 billion, was ultimately thrown out by the Alabama Supreme Court. *See* Joel Rosenblatt & Laurence Viele Davidson, *Exxon Wins $3.5 Billion Appeal in Alabama Fees Case*, Bloomberg, Nov. 1, 2007, *at* http://www.bloomberg.com/apps/news?pid=newsarchive&sid=afqiYjedTs _o&refer=news. Exxon was required to post a $4.5 billion appeal bond, *see id.,* as Alabama limits the amount of a bond only for tobacco defendants. *See* Ala. Code § 6-12-4. Most businesses – particularly small, closely held, family-owned businesses - would not have the liquid assets necessary to meet such a requirement.

Insurers, product manufacturers, and other businesses also face extraordinary judgments that necessitate appeal bond limits. According to the *National Law Journal*, there were 82 verdicts over $25 million in 2013, including 19 verdicts at or exceeding $100 million, and 3 verdicts exceeding $1 billion. *See* Top 100 Verdicts of 2013, Nat'l L.J., Mar. 24, 2014, *at* http://www.nationallawjournal.com/id=1202647966490/Top-100-Verdicts-of-2013. These verdicts spanned areas including anti-trust, toxic tort, intellectual property, product liability, medical malpractice, and nursing home liability. *See id.*

It is no longer difficult to find examples of these types of massive awards. Last April, a federal jury in Louisiana reached a $9 billion verdict against Takeda Pharmaceutical Co. and Eli Lilly & Co. stemming from a lawsuit alleging that the companies did not adequately disclose the risks of the diabetes medicine, Actos. *See* Hiroyuki Kachi, *Takeda, Lilly Ordered to Pay $9 Billion in Diabetes-Drug Case*, Wall St. J., Apr. 8, 2014.[2] Other top product liability verdicts of 2014 included $23.6 billion against a tobacco company, $1.2 billion against paint manufacturers in a novel public nuisance suit, and $81.1 million against an automaker in a case alleging a steering defect (after the trial court judge reduced a $248 million verdict). *See* Sindhu Sundar, *Top Product Verdicts of 2014—And the Firms That Won Them*, Feb. 9, 2015, at http://www.law360.com/articles/619796/top-product-verdicts-of-2014-and-the-firms-that-won-them.[3]

Given that verdicts such as these are "the new normal," it is particularly important that Texas's appeal bond statute is interpreted in a manner that

---

[2] The trial court judge reduced the verdict to $36.8 million. Jef Feeley, *Takeda, Lilly Win 99.6% Cut in Actos Punitive Damages*, Bloomberg, Oct. 28, 2014, *at* http://www.bloomberg.com/news/articles/2014-10-27/takeda-lilly-get-9-billion-actos-award-cut-99-percent. Had the trial court not significantly reduced the award, the federal rules gave the judge discretion to set a lower bond. *See N. Ind. Pub. Serv. Co. v. Carbon County Coal Co.*, 799 F.2d 265, 281 (7th Cir. 1986) (finding Fed. R. Civ. P. 62(d) did not require utility to post $181 million bond).

[3] While trial courts are likely to use remittitur to reduce many "runaway" verdicts, as several of the cases discussed in this *amicus* brief show, some judges may allow the verdict to stand. In these instances, it is imperative that a company have the ability to pursue an appeal.

6

safeguards and preserves the ability of defendants to appeal an extraordinary judgment.

## II. TEXAS HAS LED THE STATES IN ADOPTING APPEAL BOND REFORMS IN RESPONSE TO INSTANCES OF MANIFEST INJUSTICE DUE TO EXCESSIVE BONDS

### A. The *Texaco v. Pennzoil* Case Exemplifies the Impossible Choices Faced by Texas Defendants with Blockbuster Judgments Before the 2003 Appeal Bond Reforms

One of the most dramatic examples of the impact of unconstrained appeal bond rules occurred here in Texas in the 1980s, after a $10.53 billion verdict— $7.53 billion in actual damages, plus $3 billion in punitive damages and interest — against Texaco. *See generally* Elaine Carlson, *Mandatory Supersedeas Bond Requirements - A Denial of Due Process Rights?*, 39 Baylor L. Rev. 29 (1987) (discussing *Pennzoil v. Texaco*).

Texas's Rules of Appellate Procedure at the time required posting a bond equal to the entire judgment, regardless of amount, plus costs and interest for the estimated duration of the appeal. *See In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 170 (Tex. 2013) (citing former Tex. R. App. P. 24.2(a)(1)). Texaco sought and successfully obtained a federal injunction, arguing that Texas's appeal bond requirement effectively prevented it from appealing in violation of the Due Process Clause of the Fourteenth Amendment. *See Texaco, Inc. v. Pennzoil Co.*, 626 F. Supp. 250, 256 (S.D.N.Y.), *aff'd*, 784 F.2d 1133 (2d Cir. 1986) (requiring a

$1 billion bond). While an appeal of that ruling was pending before the U.S. Supreme Court, a Texas appellate court upheld the trial court's verdict, but reduced the punitive damage award by $2 billion. *See Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768 (Tex. App. 1987). The U.S. Supreme Court then reversed the federal injunction, finding that the lower courts should not have intervened in a pending state proceeding. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10 (1987).

Six days after the U.S. Supreme Court's decision restoring the full bond required by Texas law, Texaco filed for bankruptcy, becoming the largest company in U.S. history to seek protection under Chapter 11. *See* Michael Arndt, *Texaco Files For Bankruptcy: Oil Giant Buys Time in $12 Billion Fight*, Chic. Trib., Apr. 13, 1987. The bankruptcy filing had the effect of an appeal bond, providing an automatic stay on execution of the judgment, and the litigation eventually settled at a fraction of the verdict. *See* Doug Rendleman, *A Cap on the Defendent's Appeal Bond?: Punitive Damages Tort Reform*, 39 Akron L. Rev. 1089, 1105-06 (2006). Bankruptcy, however, is an odious alternative to posting a bond. *See id.* at 1106-07. It can harm employees, shareholders, and creditors. *See* Arndt, *supra* (reporting that the filing immediately hurt Texaco's ability to conduct day-to-day operations, such as the ability to obtain credit and the loss of major suppliers, and led the company to suspend dividends and anticipate a significant drop in its stock price).

8

**B.    As Instances of Injustice Mounted, Texas Had the Foresight to Enact a Generally Applicable Appeal Bond Limit**

*Texaco* was a preview of a problem that, with an increasing number of blockbuster verdicts, would soon rise to a national concern.  Throughout the country, appeal bond rules requiring defendants to post security in the full amount of a judgment (or more) created unfair roadblocks to the ability to appeal crushing verdicts.

The problem of oppressive appeal bonding requirements became particularly evident during the state attorneys general litigation against the tobacco industry and in the private lawsuits that followed.  Commentators at the time suggested that the defendants "may have been forced into bankruptcy" because they likely "would have lacked the resources to immediately pay the judgments (or even to post an appeal bond)." *See* Richard L. Cupp, *State Medical Reimbursement Lawsuits After Tobacco:  Is the Domino Effect For Lead Paint Manufacturers and Others Fair Game?*, 27 Pepp. L. Rev. 685, 689-90 (2000).

Concerns about bankrupting appeal bonds potentially blocking the ability to appeal moved from the theoretical to the practical in 2000 with a record-setting $145 billion punitive damage award in a 700,000 member class action against the tobacco industry in Florida.  In order to allow the defendants the opportunity to appeal the unprecedented judgment, the Florida legislature stepped in to reform the state's bonding statute. *See* Fla. Stat. Ann. § 768.733.  The blockbuster award was

9

ultimately overturned. *See Engle v. Liggett Group, Inc.*, 945 So. 2d 1246 (Fla. 2006).

The unfairness of appeal bonds came up again in Illinois in 2003 when a Madison County class action resulted in a $10.1 billion verdict against a tobacco company alleged to have misled consumers about the health effects of light cigarettes compared to regular cigarettes. The trial court judge initially set the appeal bond at $12 billion, and after lengthy hearings, cut the bond in half. An appellate court, however, overturned the trial court judge's reduction of the bond. *See Price v. Philip Morris Inc.*, 793 N.E.2d 942 (Ill. App. Ct. 2003). The editorial page of the *New York Times* weighed in to protest the unfairness of requiring a $12 billion bond, likened it to "extortion" to settle, decried the violation of due process, and noted requiring such a bond "erodes the credibility of our legal system." *See* Editorial, *Too Costly an Appeal*, N.Y. Times, Apr. 4, 2003, at A20. The Illinois Supreme Court reinstated the lowered bond. *Philip Morris, Inc. v. Ill. App. Ct., Fifth Dist.*, No. 96644, 2003 Ill. LEXIS 2625 (Ill. Sept. 16, 2003). It then amended its rules to avoid such unfairness in the future by clearly giving trial court judge's discretion in setting the amount of the bond. *See* Ill. Sup. Ct. R. 305(a), Commentary (2004), *at* http://www.state.il.us/COURT/SUPREMECOURT/Rules/ Art_III/ArtIII.htm#305 (recognizing that in some circumstances an appeal bond for the full amount of the judgment, interest, and costs "may be so onerous that it

10

creates an artificial barrier to appeal, forcing a party to settle a case or declare bankruptcy").

Due to these types of cases, some of the early states to adopt appeal bond caps applied them only to tobacco companies. *See, e.g.,* Nev. Rev. Stat. § 20.035.1 (enacted 2001); W. Va. Code § 4-11A-4 (enacted 2001). With the troubling history of the *Texaco* fiasco hanging over the state's reputation, the Texas Legislature had the foresight to enact the appeal bond limit at issue in this case, which applies to all defendants in any type of litigation.[4] The legislation limited appeal bonds to the lesser of 50% of the judgment debtor's net worth or $25 million. Tex. Civ. Prac. & Rem. Code § 52.006(b). The Legislature enacted the appeal bond cap as part of a comprehensive civil justice reform bill that has created a more business-friendly environment in Texas. *See* H.B. 4, 78th Leg., R.S. (2003).[5]

---

[4] Other states also recognized that safeguarding the right to appeal was not a tobacco-specific issue. For example, Loewen Group, a Canadian funeral home and insurance chain, was forced to settle a dispute with a competitor after a Mississippi jury reached a $500 million verdict against it. *See* Rendleman, 39 Akron L. Rev. at 1128-29 (discussing *O'Keefe v. The Lowen Group*, No. 91-67-423 (Circ. Ct., Hinds Co., Miss. 1995)). Under Mississippi's rules, the company was required to post a $625 million bond, the approximate net worth of the company. *Id.* To avoid filing for bankruptcy protection, the company settled the case for $175 million. *See* Nina Bernstein, *Funeral Chain Settles, Avoiding a Big Bill*, N.Y. Times, Jan. 30, 1996, at D5. Soon thereafter, Mississippi limited appeal bonds, but it was too late to help Loewen. *See* Miss. R. App. R. 8 (amended in 2001 to limit appeal bonds to the lesser of 125% of the judgment, 10% of the net worth of the defendant, or $100 million).

[5] For articles documenting the success of Texas's 2003 reform package, *see generally* Joseph Nixon, Ten Years of Tort Reform in Texas: A Review (Heritage Found. & Tex. Pub. Pol'y Found. 2013), *at* http://thf_media.s3.amazonaws.com/2013/pdf/bg2830.pdf; The Perryman

Unlike the prior appellate rule, the Texas statute does not require a debtor to secure any punitive damages portion of the award. *Id.* § 52.006(a)(1). The 2003 law also reduced the evidentiary burden required for a debtor to seek a lower bond due to the substantial economic harm it would cause. *Id.* § 52.006(c). As this Court recognized, the Legislature's enactment of Section 52.006 "'reflect[ed] a new balance between the judgment creditor's right in the judgment and the dissipation of the judgment debtor's assets during the appeal against the judgment debtor's right to meaningful and easier access to appellate review.'" *Nalle*, 406 S.W.3d at 170 (quoting Elaine A. Carlson, *Reshuffling the Deck: Enforcing and Superseding Civil Judgments on Appeal after House Bill 4*, 46 S. Tex. L. Rev. 1035, 1038 (2005)). In 2013, consistent with the purpose of the statute, this Court held that a prevailing party's attorney's fees and costs are typically not "compensatory damages" included in a judgment debtor's bond. *See id.* The Court should again interpret the statute to promote appellate rights.

---

Group, A Texas Turnaround: The Impact of Lawsuit Reform on Business Activity in the Lone Star State (2008), *at* http://tlrfoundation.com/beta/files/Texas_Tort_Reform_Report_2008.pdf.

## C. The Vast Majority of States Now Protect a Defendant's Ability to Appeal

Recognizing the problem of unconstrained appeal bonds, approximately thirty jurisdictions have passed legislation or amended court rules to limit the size of the bond requirements in any civil case involving a large judgment.[6] Like Texas, these states acted to safeguard a defendant's right to appeal. The Court should interpret Texas's appeal bond statute to promote this sound policy.

Texas's appeal bond statute is in the mainstream. Many states have adopted similar $25 million limits. *See, e.g.,* Ark. Code § 16-55-214; Ariz. Rev. Stat. § 12-2108; Colo. Rev. Stat. § 13-16-125; Ga. Code Ann. § 5-6-46; Haw. Rev. Stat. Ann. § 607-26; Ind. Code Ann. § 34-49-5-3; Mich. Comp. Laws § 600.2607(1); N.C. Gen. Stat. § 1-289; N.D. Cent. Code § 28-21-25; Okla. Stat. Ann. tit. 12 § 990.4(B)(5); S.C. Code Ann. § 18-9-130(A)(1); S.D. Sup. Ct. R. 03-13; Tenn. Code Ann. § 27-1-124; Va. Code Ann. § 8.01-676.1; Wyo. Stat. § 1-17-201.

In recent years, states continue to follow Texas's lead. For example, Arizona similarly limited appeal bonds to the lesser of $25 million or 50% of the appellant's net worth. Ariz. Rev. Stat. § 12-2108 (enacted 2011). South Carolina limited the amount of an appeal bond to $25 million for all judgments against

---

[6] Approximately ten additional states have enacted appeal bond limits specific to tobacco litigation. Six jurisdictions do not require defendants to post a bond at all during an appeal. *See* Conn. R. App. P. § 61-11; Me. R. Civ. P. 62; Mass. R. Civ. P. 62(d); N.H. Rev. State. Ann. § 527:1; Vt. R. Civ. P. 62(d)(1); P.R. R. Civ. P. 53.9.

13

defendants with fifty or more employees and gross revenue of $5 million, and $1 million for all judgments against all other defendants. S.C. Code Ann. § 18-9-130(A)(1) (enacted 2011). Tennessee lowered the amount a defendant can be required to pay to appeal a decision from $75 million to $25 million, not to exceed 125% of the judgment. Tenn. Code Ann. § 27-1-124 (enacted 2011). North Carolina maintained its $25 million limit set in 2003, but required its courts to hold a hearing to determine a fair amount of the bond. N.C. Gen. Stat. § 1-289 (amended 2011). Oklahoma, similar to Texas, amended its $25 million limit to eliminate the need to bond any portion of the award for punitive damages. Okla. Stat. Ann. tit. 12 § 990.4(I) (enacted 2009); *see also* Mont. Code Ann. § 25-12-103 (enacted 2013) (limiting appeal bonds to $50 million).

Many state bond caps do not explicitly address the maximum amount of the bond when there are multiple defendants. Those statutes in which the legislature thought to expressly address the issue recognize that the cap should apply collectively to all appellants. *See* Colo. Rev. Stat. § 13-16-125(1); Ga. Code Ann. § 5-6-46(b); Ky. Rev. Stat. § 411.187(1); Mo. Rev. Stat. § 512.099(1); *see also* W. Va. Code Ann. § 58-5-14(b) (treating multiple judgments resulting from cases consolidated or aggregated for trial as a single judgment). Texas's appeal bond limit should be applied in this manner. The alternative is a return to massive

14

appeal bond requirements in complex cases, high-stakes cases involving multiple defendants, where the risk of an error is particularly high.

## III. THE STATUTE SHOULD BE READ TO PROMOTE THE AVAILABILITY OF MEANINGFUL APPELLATE REVIEW

Without fair limits on appeal bonds, there is often only one way for a defendant to avoid bankruptcy after an extraordinary verdict: the defendant must settle, even if the judgment resulted from egregious errors, and it must do so at a "premium" rate, because the plaintiff knows the defendant has no alternative. Following Texas's lead, states have increasingly protected the right to appeal by expanding the applicability of appeal bond limits from tobacco to all litigation, excluding the punitive damage portion of awards from bonding requirements, and reducing the maximum amount of the bond. It would be both odd and unfortunate for Texas to backpedal now by adopting an interpretation of its appeal bond limit that impairs the right to meaningful appellate review. Texas's appeal bond limit should be read in the context of its pre-2003 experience with excessive appeal bonds, with the legislative intent as recognized by this Court, and in a manner that safeguards the right to appeal in an environment of increasingly novel legal theories and breathtaking verdicts.

## PRAYER

For the foregoing reasons, *Amici* respectfully request that this Court affirm the ruling of the Court of Appeals, Fourth District, finding that the supersedeas bond contained in Tex. Civ. Prac. & Rem. Code § 52.006 applies per judgment, not per judgment debtor.

<div style="margin-left:40%">

Respectfully submitted,

/s/ Elmore James Shepherd III
Elmore James Shepherd III
SBN 24008025
eshepherd@shb.com
SHOOK, HARDY & BACON L.L.P.
JP Morgan Chase Tower
600 Travis Street, Suite 3400
Houston, TX 77002
(713) 227-8008
(713) 227-9508 (fax)

*Counsel for Amici Curiae*

</div>

Dated: February 20, 2015

16

## CERTIFICATE OF COMPLIANCE

I hereby certify that: (1) the word count of this document is 3,599 words according to Microsoft Word 2010 and excluding those parts of the document specified in Tex. R. App. P. 9.4(i)(1); and (2) this document was prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes, with the exception of the counsel listing on the cover.

/s/ Elmore James Shepherd III
Elmore James Shepherd III

17

## CERTIFICATE OF SERVICE

I certify that on February 20, 2015, a copy of the foregoing Brief was served

upon the following by first class U.S. mail, postage prepaid, addressed as follows:

Craig B. Florence
Randy D. Gordon
Stacey R. Obenhaus
Rachel Kingrey
GARDERE WYNNE SEWELL LLP
1601 Elm Street, Suite 3000
Dallas, Texas 75201-4761
    and
Mikal C. Watts
Francisco Guerra IV
WATTS GUERRA, LLP
Four Dominion Drive
Bldg. 3, Suite 100
San Antonio, Texas 78257
*Attorneys for*
*Longview Energy Company*

Pamela Stanton Baron
Post Office Box 5573
Austin, Texas 78763
*Attorney for Rick D'Angelo*

Sharon E. Callaway
CROFTS & CALLAWAY, P.C.
613 N.W. Loop 410, Suite 800
San Antonio, Texas 78216-5509
    and
Ricardo R. Reyna
BROCK PERSON GUERRA REYNA, P.C.
17339 Redland Road
San Antonio, Texas 78247
*Attorneys for*
*William R. "Bill" Huff*

Daryl L. Moore
DARYL L. MOORE, P.C.
1005 Heights Boulevard
Houston, TX 77008
*Attorney for*
*The Huff Energy Fund, L.P.*

Thomas R. Phillips
Matt C. Wood
BAKER BOTTS L.L.P.
98 San Jacinto Blvd.
Suite 1500
Austin, TX 78701
    and
Dean V. Fleming
Michael W. O'Donnell
Jeffrey A. Webb
FULBRIGHT & JAWORSKI, L.L.P.
300 Convent St., Ste. 2100
San Antonio, TX 78205
*Attorneys for Riley-Huff Energy Group, LLC*

The Honorable Amado Abascal
Judge, 365th Judicial District Court
501 Main Street
Eagle Pass, Texas 78852
    and
Fourth Court of Appeals
Cadena-Reeves Justice Center
300 Dolorosa, Suite 3200
San Antonio, Texas 78205-3037
*Respondents*

/s/ Elmore James Shepherd III

18

12-630-cv



www.shb.com

**James Shepherd**

JPMorgan Chase Tower
600 Travis Street, Suite 3400
Houston, Texas
77002-2926
713.227.8008
713.546.5610 DD
713.227.9508 Fax
ESHEPHERD@SHB.COM

February 20, 2015

BY US MAIL

The Honorable Amado Abascal
Judge, 365th Judicial District Court
501 Main Street
Eagle Pass, Texas 78852

Re:   No. 14-0175; *In the Supreme Court of Texas*
      In Re: Longview Energy Company, Relator

Dear Honorable Amado Abascal:

Enclosed please find the Brief of Amici Curiae Chamber of Commerce of the United States of America, et. al, that was electronically filed with the Supreme Court of Texas today.

Sincerely,

James Shepherd
Partner

EJS:mlg
Enclosure

cc:   Craig B. Florence          Thomas R. Phillips
      Randy D. Gordon            Matt C. Wood
      Stacey R. Obenhaus         Dean V. Fleming
      Mikal C. Watts             Michael W. O'Donnell
      Francisco Guerra IV        Jeffrey A. Webb

      *Attorneys for Longview Energy*    *Attorneys for Riley-Huff Energy Group, LLC*
      *Company*

      Sharon E. Callaway         Pamela Stanton Baron
      Ricardo R. Reyna
                                 *Attorney for Rick D'Angelo*
      *Attorneys for William R. "Bill" Huff*

      Daryl L. Moore             Fourth Court of Appeals

      *Attorney for The Huff Energy Fund, L.P.*

Denver
Geneva
Houston
Kansas City
London
Miami
Orange County
Philadelphia
San Francisco
Seattle
Tampa
Washington, D.C.

607906 v1



$ 002.03⁰
FEB 20 2015
0000651919
MAILED FROM ZIP CODE 77002



IN THE COURT OF APPEALS
AT SAN ANTONIO, TEXAS

2015 FEB 23 AM 11: 49

FILE CLERK

# FIRST CLASS MAIL

**Shook,**
**Hardy&**
**Bacon** L.L.P.

www.shb.com
JPMorgan Chase Tower
600 Travis Street, Suite 3400
Houston, Texas 77002-2926

x64040

FOURTH COURT OF APPEALS
CADENA-REEVES JUSTICE CENTER
300 DOLOROSA SUITE 3200
SAN ANTONIO TEXAS 78205-3037

First Class Mail









